Eugene DIGGS, Appellant,

v.

STATE of Indiana, Appellee.

No. 46S00–8612–CR–1045.

Supreme Court of Indiana.

Dec. 7, 1988.

Scott L. King, King and Meyer, Gary, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant for the following offenses: Delivering a Controlled Substance (Cocaine), a Class B felony, for which he received twenty (20) years; two counts of Possession of Cocaine, a Class D felony, for which he received two (2) years on each count; Dealing in a Controlled Substance (Heroin), a Class B felony, for which he received twenty (20) years; Possession of a Narcotic Drug (Heroin), a Class C felony, for which he received five (5) years; and Possession of Marijuana, a Class D felony, for which he received two (2) years, all sentences to run concurrently.

The facts are: On September 26, 1985, Joyce Howell was in the custody of the Michigan City Police for possession of a handgun without a license. She revealed to Detective Larry Kunkle that she was a heroin user and named Eugene "Boogie" Diggs, appellant herein, as her source. Howell agreed to be wired with a body transmitter and make a controlled buy from appellant, using $75 in "buy money," i.e., currency from which the serial numbers had been recorded.

After searching Howell, police dropped her near appellant's house, then maintained visual surveillance and monitored her transmitter. She was seen to enter appellant's house, then leave, and then reenter at the behest of a man later identified as Harold Bowers. Howell later testified she first was refused a sale but Bowers vouched for her, called her back, and a drug sale was consummated. The body transmitter experienced localized interference while inside appellant's house and failed to transmit clearly the sale itself, but police were able to identify the voices of Bowers, Leonardo Victory, and appellant, who stated, "Give it to the loudmouth and then get her out of here." Howell rendezvoused with police and turned over three packets of powder for which she had paid the $75; field tests revealed they contained cocaine and heroin. She related to police that she had seen various other quantities of drugs and paraphernalia in plain view inside appellant's house.

After posting an officer to maintain surveillance of the house, Detective Kunkle drove Howell back to the police station. He then returned to appellant's house with several other officers. When he knocked on the door and stated, "Open up, police," no one answered. Detective Kunkle then opened the unlocked door and entered, followed by four other officers. The occupants of the house were informed the police were there to recover the "recorded drug buy money." Appellant, Harold Bowers, Leonardo Victory, and Russell Lipsey were arrested and searched. The officers observed quantities of suspected drugs and paraphernalia in plain view.

After securing the house, Detective Kunkle left and obtained a search warrant. Upon his return, the ensuing search turned up heroin, cocaine, marijuana, "cutting" equipment, and other drug paraphernalia. Ten dollars of the buy money was found on Lipsey and the remainder, $65, was found on appellant. While the latter was being processed at the police station, a packet containing what turned out to be cocaine fell out of his shirtsleeve.

Appellant contends the initial warrantless entry of the police into his home violated his Fourth Amendment right against unreasonable search and seizure. He maintains the trial court erred in denying his motion to suppress, and in later admitting into evidence over his objection, the evidence obtained as a result of that entry. In general, "[w]arrantless searches are presumed unreasonable, and the State bears the burden of showing that the search is within one of the exceptions to the warrant requirement." *Murphy v. State* (1986), Ind., 499 N.E.2d 1077, 1081.

▇ In the case at bar, the State contends the warrantless entry was justified by the existence of probable cause that a felony had been committed, as well as exigent circumstances making it impractical to wait until a search warrant could be issued. *Tata v. State* (1986), Ind., 486 N.E.2d 1025. "One such exigency is that there is reason to believe evidence is being destroyed or is about to be destroyed." *Short v. State* (1982), Ind., 443 N.E.2d 298, 303.

The State asserts that the need to recover the marked money as evidence of the controlled buy constituted an exigency. Under the particular facts of this case, we agree. Surveillance of appellant's house during the controlled buy indicated a high volume of persons coming and going. At the suppression hearing, the trial court found the possibility that the marked buy money would become dispersed among appellant's drug, gambling, and bootleg liquor and cigarette customers as change before a warrant could be obtained was more than mere speculation. We agree. The fact that localized interference disrupted reception from Howell's body transmitter made the buy money crucial as the only evidence available to corroborate Howell's version of the actual drug transaction. The entry into appellant's house was, under the circumstances, reasonable; thus the evidence seized as a result was properly admitted.

Appellant contends the trial court erred in two separate rulings relating to the failure to admit the allegedly exculpatory testimony of Harold Bowers. Just prior to the presentation of evidence for the defense, the prosecutor approached Bowers in the corridor. The prosecutor informed Bowers that if he testified to "the same statements he did in his deposition, he [would] be charged, according to his own testimony." Bowers subsequently invoked his Fifth Amendment privilege and refused to testify when called as a witness. Appellant contends this action by the prosecutor amounted to misconduct. Various courts have held such prosecutorial conduct to violate the due process rights guaranteed by the Fifth and Fourteenth Amendments as well as the Sixth Amendment right to compel witnesses in a defendant's favor.

■ While a trial court judge may advise a witness of his right to avoid self-incrimination he may not do so in a threatening or browbeating manner. *Webb v. Texas* (1972), 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330. A prosecutor's warning of criminal charges during a personal interview with a witness improperly denies the defendant the use of that witness's testimony regardless of the prosecutor's good intentions. *United States v. Morrison* (3rd Cir.1976), 535 F.2d 223. A prosecutor may not prevent nor discourage a defense witness from testifying. *Washington v. Texas* (1967), 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019.

■ Upon Bowers' refusal to testify, appellant offered his deposition into evidence; the prosecutor objected, contending it was not admissible because Bowers was not unavailable as a witness. The trial court ruled that the deposition would not be used. Appellant claims this was error. We agree. A deposition is admissible if the deponent invokes his Fifth Amendment privilege to remain silent when called as a witness. Ind.R.Tr.P. 32(A)(3)(e).

■ Neither Bowers' deposition nor an offer to prove regarding his testimony was to be found in the record. This Court *sua sponte* ordered the deposition brought up. We find that Bowers' testimony was consistent with that of appellant's other two witnesses, Lipsey and Victory, both of whom testified that informant Howell bought the drugs from Bowers as appellant was not home at the time; thus, no prejudice was shown. To demonstrate reversible error, appellant must make a plausible showing that the improperly suppressed testimony would have been materially favorable to his defense in a way not merely cumulative to that of available witnesses. *United States v. Cervantes–Gaitan* (9th Cir.1986), 792 F.2d 770. Testimony indicating that Bowers made the drug sale on appellant's behalf does not tend to exculpate appellant, who is still vicariously liable as the principal despite his absence during the transaction. *Chinn v. State* (1987), Ind., 511 N.E.2d 1000; Ind.Code § 35–41–2–4. The errors concerning Bowers' testimony and deposition are thus deemed harmless due to appellant's failure to demonstrate prejudice.

■ Appellant contends there was insufficient evidence to support both of his convictions for possession of cocaine. Counts II and III of the information originally charged him with two Class C felony counts of possession of over three (3.0)

grams of cocaine. The evidence adduced at trial revealed, however, that the cocaine seized in the course of appellant's arrest amounted to a total of less than two (2.0) grams of cocaine. The trial court ruled that Counts II and III should go to the jury as no more than Class D felonies; the jury returned convictions in both counts.

Appellant now argues "State's Exhibit 3B was apparently relied upon by the State in support of one of the possession of cocaine counts that Diggs was convicted of." However, it appears after an examination of the record that State's Exhibits 17A and 18, being the .0277 grams of cocaine found in appellant's front room and the 1.7850 grams of cocaine which fell out of appellant's shirtsleeve while he was being "booked" into jail, are each sufficient to support a separate Class D conviction of possession. Thus, no other evidence was needed to prove Counts II and III, and whether State's Exhibits 3B and 3D were proven to be cocaine found in appellant's possession is immaterial. We point out that this allegation of error was not presented in appellant's motion to correct error; it thus not only is without merit but is waived as well. *Patton v. State* (1986), Ind., 501 N.E.2d 436; *Diggs v. State* (1977), 266 Ind. 547, 364 N.E.2d 1176.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

The police made a forcible entry into appellant's house at 3:55 p.m. without a warrant. The police agent, Joyce Howell, had made the drug purchase and exited that house at 3:38 p.m. During this seventeen (17) minute interval, Officer Kunkle went with Howell to the police station and returned. Kunkle had the drugs and Howell in hand.

During this seventeen (17) minute interval, the house and its entrance were under constant surveillance by officers including officer Harris. Regarding his observations during this time period he testified as follows:

Q. Did you see anyone approaching the house or going towards the house during that time?

A. There was quite a few people walking in the area, so it was hard to tell if people were walking—where they were acutally [sic] walking to.

Q. Did you see any cars stop by the house or near the east side of the house where you had an observation point?

A. There were vehicles in and out of that area.

Q. By in and out, do you mean they parked and got out of the car and went inside or?

A. Yes. I believe there was a vehicle, at least one vehicle, that stopped.

Officer Kunkle supplied the following explanation of warrantless entry.

Q. Okay. Now, will you explain to the Jury why you decided to go into that house and make an arrest right away?

A. This house was—had a lot of traffic in it. We've had it under surveillance for a long time. There was people in and out of there constantly. The front door was barricaded shut at all times. The back door was the only entrance to this house, and people were, through our intelligence, people were coming and going here, buying drugs, gambling, buying cigarettes, buying alcoholic beverages, and I was afraid that our money was going to be made into change for one of these other things and our money could leave. We knew from the informant that there were drugs in this room (indicating). Drugs are very disposable. It is very common practice for people to keep drugs in containers that you can fill with water right away, so that if somebody knocks at the door and says police, run to the sink, fill it up with water, the drugs are gone.

The burden was upon the prosecution to demonstrate that the conduct of the police in entering appellant's house fell within one of the exceptions to the general rule requiring a warrant. *Tata v. State* (1986), Ind., 486 N.E.2d 1025. The State contends that exigent circumstances existed which justified their warrantless entry. The basis for this exception was set forth in *Ludlow v. State* (1974), 262 Ind. 266, 314 N.E.2d 750, in the following manner:

> The rationale for the clearly defined exception to the warrant requirement in cases of destruction of evidence is based on the need for quick action because the evidence is actually in the process of being destroyed or is about to be destroyed.

The testimony of the State's witnesses showed that there was but a single entrance to appellant's house. It was under surveillance by several officers following Howell's exit. None testified directly that a single person entered or left through that door during the seventeen minute interval between Howell's exit and Kunkle's forcible entry. Surely the reality of this situation was that there could be no danger of loss of the marked money until someone tried to leave the apartment. The money and the drugs were bottled up in the house and there is no reason at all to believe that its occupants were alerted to the existence of the undercover operation. Clearly, the State has failed to meet its burden of justifying the warrantless entry.

As the entry of the police into appellant's house without prior judicial approval was unconstitutional conduct, those items of evidence which were the direct as well as indirect products of such entry, should have been suppressed. *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).