956 F.2d 1165
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Eugene DIGGS, Petitioner/Appellant,
v.
Thomas D. RICHARDS,* Superintendent and
Indiana Attorney General, Respondents/Appellees.
 No. 90-1720.
 United States Court of Appeals, Seventh Circuit.
 Argued March 3, 1992.
Decided March 13, 1992.
 
 Before BAUER, Chief Judge, MANION, Circuit Judge, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Petitioner Eugene Diggs appeals the district court's order denying his application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We affirm.
 
 
 2
 Joyce Howell, while in custody of the Michigan City Police Department, revealed to Detective Larry Kunkle that she was a heroin user and named Eugene "Boogie" Diggs as her source. After she agreed to participate in a controlled drug buy between herself and Diggs, the police released her from custody, gave her marked money, outfitted her with a miniature body transmitter, and dropped her off at the house that Diggs rented.
 
 
 3
 At Diggs' trial, Howell testified that she entered the house through the back door and saw Leo Victory, Russell Lipsey, and Harold Bowers. When she asked to buy drugs, Lipsey accused her of being a "snitch" and told her to leave. Bowers called her back into the house, took the marked money, and told Lipsey to sell her some drugs. Howell testified that she went back into the house and saw Lipsey enter Diggs' bedroom, where she observed Diggs lying on his bed. Howell further testified that she saw Lipsey give Diggs the marked money and heard Diggs say something about her loud mouth. Then, according to Howell, Diggs took some paper and aluminum foil packets off a table in front of his bed and gave them to Lipsey, who then gave them to her.[2] Howell left the house and turned over the three packets--later determined to contain heroin and cocaine--to the surveillance officers. About fifteen minutes later, the police entered the house and discovered Diggs' in a back bedroom sitting on the bed with a loaded .25 caliber automatic pistol at his side. The police arrested and searched Diggs. The search revealed $65 of the marked money.
 
 
 4
 At trial, Diggs maintained that he was not in the house during the drug buy, nor was he involved in the drug transaction. In support of this theory, Diggs called several witnesses who testified that he was not in the house during the drug transaction and that he only arrived at the house shortly before the police entered and arrested him. The jury rejected Diggs' innocent bystander theory and found him guilty of one count of delivering heroin and one count of delivering cocaine. After exhausting his available remedies in the Indiana state courts, Diggs filed a section 2254 petition for habeas corpus, which the district court denied. We affirm.
 
 
 5
 Diggs contends that the prosecutor's threat to criminally charge defense witness Harold Bowers if he testified on Diggs' behalf constituted "per se" reversible error under the due process clause. Immediately before the defense presented its witnesses, the prosecutor approached Bowers in the court corridor and told him that if he testified to "the same statements he did in his deposition, he [would] be charged according to his own testimony." Diggs v. State, 531 N.E.2d 461, 464 (Ind.1988). After this meeting with the prosecutor, Bowers took the stand, invoked the Fifth Amendment, and refused to testify.
 
 
 6
 There is no dispute that the prosecutor's conduct amounted to error. See Webb v. Texas, 409 U.S. 95, 98 (1972) (per curium) (government threats or intimidation that dissuade a potential defense witness from testifying may violate due process). Nevertheless, this kind of prosecutorial misconduct--coercion of a potential defense witness--is a "trial error" subject to a harmless error analysis. Arizona v. Fulminante, 111 S.Ct. 1246, 1263-64 (distinguishing constitutional violations "affecting the framework within which the trial proceeds," which can never be harmless error from constitutional deprivations involving "trial errors," which are subject to a harmless error analysis); see also e.g., Crane v. Kentucky, 476 U.S. 683, 690 (1986) (analyzing improper exclusion of defense testimony under harmless error analysis); Delaware v. Van Arsdale, 475 U.S. 673 (1986) (applying harmless error analysis to unconstitutional restriction of the defendant's Sixth Amendment right to cross-examine a witness); United States v. Hasting, 461 U.S. 499 (1983) (subjecting Fifth Amendment violation arising out of prosecutor's improper comment on the defendant's silence at trial to harmless error analysis).
 
 
 7
 The prosecutor's unconstitutional interference with Bowers' decision to testify was harmless beyond a reasonable doubt. First, Bowers' deposition testimony is not as favorable as Diggs contends. United States v. Ashford, 871 F.2d 680, 688 (7th Cir.1989). While the deposition may inculpate Bowers, it does not exculpate Diggs. At his deposition, Bowers testified that he took Howell's money and gave it to Lipsey, in exchange for drugs which Bowers gave to Howell. But, Bowers also testified that he did not know who supplied Lipsey with the drugs. Moreover, Bowers never affirmatively testified that Diggs was not present in the home during the drug transaction. Although Bowers did not name Diggs as one of the individuals present during the drug sale, he admitted that other individuals may have been present, that other people could have entered and left the house without him noticing, and that he did not see which room Lipsey went into to get the drugs.
 
 
 8
 Second, Bowers' testimony would not have affected the jury's verdict. Id. Diggs presented three witnesses, two of which definitively testified that he was not in his home during the time of the drug sale.[3] One of those witnesses also testified that Howell bought the drugs from Bowers. The testimony of Diggs' trial witnesses was more favorable to Diggs than Bowers' testimony. Bowers' deposition reveals that even if he had testified at trial, he would not have been able to testify that Diggs did not provide the drugs to Lipsey because he did not see where Lipsey went to get the drugs. The jury chose to reject Diggs' defense which was supported by more favorable testimony than Bowers could offer at trial, thus it is unlikely that had Bowers testified the verdict would have been different.
 
 
 9
 Diggs' last contention is that the prosecutor's threat to criminally charge Bowers if he testified consistently with his deposition, coupled with the Indiana court's exclusion of that deposition as hearsay, violated the principles established in Chambers v. Mississippi, 410 U.S. 284, 298-303 (1973). Having already concluded that the deprivation of Bowers' deposition did not prejudice Diggs and that Bowers' deposition testimony was not as favorable as Diggs contends, we cannot conclude that this evidence was "critical" to his defense. Thus, its exclusion, even when coupled with Bowers' refusal to testify, did not deny Diggs a fair trial. Lee v. McCaughtry, 933 F.2d 536, 537 (7th Cir.1991) (to secure the benefit of Chambers, petitioner must demonstrate that excluded evidence was "important" to his defense).
 
 
 10
 For the reasons stated above, the district court's denial of relief is AFFIRMED.
 
 
 
 *
 Pursuant to Fed.R.App.P. 43(c)(1), Thomas D. Richards is substituted for Jack R. Duckworth
 
 
 [2]
 Howell's testimony concerning who gave Lipsey the drugs is confusing. Nevertheless, Howell consistently testified that the drug transaction occurred in Diggs' bedroom, that Diggs was present during the transaction, and that Diggs directed the drug transaction. The Indiana appellate court found that Diggs participated in the drug transaction. This court accords the state court's factual findings a presumption of correctness, as none of the conditions listed in 28 U.S.C. § 2254(d) exist. Sumner v. Mata, 455 U.S. 591, 597 (1982)
 
 
 [3]
 John Wilson testified that Diggs only arrived at his home four minutes before the police entered. Lipsey testified that Diggs arrived at his home about twenty minutes before the police entered. Victory testified that on the day of the drug buy the first time he saw Diggs was in the police car after they were both arrested