**Brandon Michael SMITH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A05–0206–CR–253.

Court of Appeals of Indiana.

April 30, 2003.

Richard Walker, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Brandon Michael Smith was convicted after a jury trial of possession of marijuana, a Class A misdemeanor,[1] and maintaining a common nuisance, a Class D felony.[2] He contends the State did not present sufficient evidence to support his convictions.

Reversed.

### FACTS AND PROCEDURAL HISTORY

On November 28, 1999, Larry Harris was at Smith's house watching a movie. When Smith lit a marijuana cigarette, Harris left. Because of a report from an unidentified source that there was marijuana in Smith's residence, Officer Lee Ann Byrne of the Madison County Sheriff's Department followed Harris's car. When she noted there was a taillight out, she stopped him. Officer Byrne noted the smell of burnt marijuana, and Harris said he had been at Smith's house and had been around the burning marijuana there. The officer issued Harris a warning ticket at 3:49 p.m.

Officer Michael Barnes of the Lapel Police Department then went to Smith's house and asked if he could search the premises. Smith apparently declined to allow the search. At 6:05 p.m. Officer Barnes obtained a search warrant for the premises. While Officer Barnes was obtaining the warrant, Smith's friend, Josh

1. Ind.Code § 35–48–4–11.

2. Ind.Code § 35–48–4–13.

Meyers, arrived at Smith's house and was present when the warrant was executed. At some point between the time Officer Barnes first spoke to Smith and the serving of the warrant, Smith called Harris and said the police had been at his house.

When the search warrant was served, the police found multiple houseplants and a number of empty pots, one of which contained what appeared to be a dead or dying plant. The police took several samples. One, labeled as "stems," tested positive as marijuana. The pot from which the sample was obtained was found in a closet. The police found in another of the closets an aquarium-like device with grow lights and reflective surfaces, along with a pressurized cylinder of carbon dioxide. The device contained a houseplant that was not marijuana. The closet had a rubber seal around the doors. They also found a book, "Marijuana Myths, Marijuana Facts," which contained information on how to grow marijuana. The police noted a green leafy substance on the floor and around the rim of the toilet and sink, but they did not photograph or take samples of the substance.

### DISCUSSION AND DECISION

In reviewing an appellate claim that the evidence was insufficient, our standard of review is well settled. We will not reweigh the evidence or judge the credibility of witnesses. *Bradley v. State,* 765 N.E.2d 204, 211 (Ind.Ct.App.2002). We examine the evidence most favorable to the judgment and all reasonable inferences that may be drawn therefrom. *Id.* We will sustain a conviction only when each material element of the charge is supported by evidence in the record from which a rational trier of fact could have found guilt beyond a reasonable doubt. *Id.*

To prove possession of marijuana, the State had to prove Smith's possession of marijuana was knowing or intentional. To prove Smith maintained a common nuisance, the State was obliged to prove Smith knowingly or intentionally maintained a place used one or more times for unlawfully keeping marijuana or items of drug paraphernalia. Smith contends the police did not prove the house where the marijuana was found was his residence or that he constructively possessed marijuana.[3]

Constructive possession will support a conviction if the State shows the defendant had both the capability and the intent to maintain dominion and control over the contraband. *White v. State,* 772 N.E.2d 408, 413 (Ind.2002). A defendant's knowledge of contraband may be inferred from the exclusive dominion and control over the premises. *Bradley,* 765 N.E.2d at 212. Where control is non-exclusive, intent to maintain dominion and control may be inferred from additional circumstances that indicate the person knew of the presence of the contraband. *White,* 772 N.E.2d at 413. Such additional circumstances include, but are not limited to: (1) incriminating statements made by the defendant; (2) attempted flight or furtive gestures; (3) a manufacturing setting; (4) proximity of the defendant to the contraband; (5) location of the contraband within the plain view of the defendant; and (6) location of the contraband within close proximity of items owned by the defendant. *Bradley,* 765 N.E.2d at 212.

Smith and Meyers were present when the police served the warrant. The only evidence as to who lived in the house came from Harris, who testified that it was Smith's house. There was no evidence

**3.** The State does not argue Smith actually     possessed marijuana.

presented regarding whether anyone else lived in the house or whether Smith owned or rented the house.

The State did not prove Smith had exclusive control of the residence where the marijuana was found. In its brief, the State directs us to seven places in the trial transcript where witnesses indicated the residence was Smith's. The State then concludes, without further reference to the record, "The State established that Smith had *exclusive control* of the apartment." (Br. of Appellee at 3) (emphasis supplied). However, none of the record references to which the State directs us indicate Smith was the only resident of the house or that his control of the premises was otherwise "exclusive." [4]

There was no testimony with respect to whether Smith had the intent and capability to maintain dominion and control over the marijuana that was found—7/10 of a gram—in a kitchen closet. Either the police never asked Smith whether it was his residence, or the State failed to question the officers as to their knowledge.

Because the State did not prove Smith's possession was exclusive, we turn to the *Bradley* factors to determine whether "additional circumstances" indicated Smith knew of the presence of contraband. The State directs us to no evidence that Smith made any incriminating statements or that he attempted flight or made furtive gestures. The police noted a plant-growing device in a closet, but that device did not contain a marijuana plant. The State does not direct us to evidence of Smith's proximity to the contraband or to evidence the marijuana found in the house was in Smith's "plain view." Nor does it direct us to evidence the contraband was within close proximity of items Smith owned.

Because the State did not prove Smith's constructive possession of marijuana by his exclusive possession of the premises or by additional circumstances indicating he knew the marijuana was present, there was insufficient evidence to support his convictions.

Reversed.

BROOK, C.J., and FRIEDLANDER, J., concur.

---

**4.** The State correctly notes, "No evidence was introduced at trial that anyone else lived at the apartment or had the right and ability to access the premises without Smith's permis-sion." (Br. of Appellee at 5.) We must decline the State's apparent invitation to shift the burden to Smith to introduce evidence that would prove his innocence.