# FOR PUBLICATION



**FILED**
May 25 2012, 8:54 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KRISTIN A. MULHOLLAND**
Appellate Division
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY DORELLE-MOORE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1109-CR-482 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Clarence D. Murray, Judge
Cause No. 45G02-0910-MR-8

**May 25, 2012**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Anthony Dorelle-Moore ("Dorelle-Moore") appeals his conviction for Murder, a felony.[1] We affirm.

**Issue**

Dorelle-Moore presents a single, consolidated issue for appeal: Whether the trial court abused its discretion in separate rulings relating to the prosecutor's communications with a potential witness.[2]

**Facts and Procedural History**

On October 16, 2009, Dorelle-Moore returned to his Gary, Indiana residence and discovered that it had been burglarized. He contacted his girlfriend, Carla Dawson ("Dawson"), who came home from work and called the Gary Police Department.

Dorelle-Moore began to voice his suspicions that Isaiah Claxton ("Claxton"), Bernard Hamilton ("Hamilton"), and Chris Martin ("Martin") were the burglars. He went to the home of Martin's cousin, making an offer that "everything will go away" if Martin and his companions would return the stolen items. (Tr. 523.) Dorelle-Moore went back home to wait for the police to arrive, and Claxton came to the residence to buy marijuana.

Claxton waited on the living room sofa while Dorelle-Moore paced back and forth, in

---

[1] Ind. Code § 35-42-1-1.

[2] Dorelle-Moore contends that the prosecutor committed misconduct and thereafter the trial court abused its discretion by refusing to take remedial measures (grant a continuance, a mistrial, or a motion to correct error). He presents a single, consolidated argument with respect to the motions, each of which was addressed to the correction of the same purported impropriety. The crux of Dorelle-Moore's allegations is that the prosecutor discouraged a witness from testifying for the defense, depriving Dorelle-Moore of his due process and his right to compel a witness in his favor.

2

and out of the residence, talking with some men on the porch, and becoming more and more agitated. At one point, Claxton attempted to leave but Dorelle-Moore's friend asserted that this made Claxton "look guilty." (Tr. 539.) Dorelle-Moore went into another room, talked with a friend, and returned with a gun. He then fired nine shots into Claxton, saying "over kill, bitch." (Tr. 545.)

Claxton's sister and her friend were attempting to reach Dorelle-Moore on his cell phone when they overheard shots. Dorelle-Moore answered the cell phone and said, "This bitch ass n----- want to steal from me. Now he laying down." (Tr. 145.) Dorelle-Moore went outside, still holding his weapon, and left in his vehicle. Claxton died in the doorway of Dorelle-Moore's home.

Later that morning, Dorelle-Moore's stepfather contacted police to arrange for Dorelle-Moore's surrender. He was charged with murder, and his jury trial commenced on March 14, 2011. At the conclusion of the trial, Dorelle-Moore was found guilty as charged. He was sentenced to fifty-five years imprisonment. Following the denial of a motion to correct error, Dorelle-Moore now appeals.

**Discussion and Decision**

Standard of Review

The decision whether to grant or deny a motion to correct error rests within the sound discretion of the trial court. Hall v. State, 796 N.E.2d 388, 394 (Ind. Ct. App. 2003), trans. denied. A decision to grant or deny a motion for a mistrial also lies within the discretion of the trial court. Randolph v. State, 755 N.E.2d 572, 575 (Ind. 2001). The defendant is not

3

entitled to a mistrial unless he is able to show that he was placed in a position of grave peril to which he should not have been subjected. Id. Finally, a decision to grant or deny a non-statutory continuance is likewise within the trial court's discretion. Stafford v. State, 890 N.E.2d 744, 750 (Ind. Ct. App. 2008). An abuse of discretion is demonstrated when the trial court's decision is against the logic and effect of the facts and circumstances before the court. Id.

## Analysis

During pretrial discovery, it came to light that a gun stolen from the burglary of Dorelle-Moore's residence had been recovered when Willie Lee James ("James"), who is Dawson's ex-boyfriend, was arrested for an unspecified offense. According to information provided to the prosecutor, James claimed to have received the gun from Hamilton.

Hamilton testified as a State's witness and during cross-examination denied knowing James. Detective Arturo Azcona then testified that the Glock .357 stolen from the Dorelle-Moore home had been found on James when he was searched incident to an arrest. At the conclusion of the testimony, the trial court asked Dorelle-Moore's counsel whether he would be calling Hamilton as a witness on the following day. Counsel responded that he would be attempting that evening to procure James as a witness.

When the parties appeared for trial the next day, Dorelle-Moore's counsel asked the prosecutor if all exculpatory evidence had been disclosed, and a bench discussion regarding James ensued. According to the prosecutor, during the previous day, Detective Azcona had spoken with a person professing to be James and James denied knowledge of the burglary.

4

The jury was reconvened, and Detective Azcona testified that he had spoken with James, and had also handed the phone to the prosecutor.

During Detective Azcona's testimony, defense counsel interjected that he "believe[d] that an effort was undertaken to deprive the defense of the availability and presence of a witness favorable to the defense by action of the State." (Tr. 703.) Again outside the presence of the jury, a bench conference ensued. Defense counsel reported that Dawson had located James and counsel had been able to speak with him by telephone. According to defense counsel, the prosecutor had advised James that there was a warrant for his arrest, and James had responded that he "can't go to jail." (Tr. 707.) Defense counsel told James he would arrange transportation in order for James to testify. James indicated he would call back. However, James did not call back or show up for trial.

The prosecutor then advised the court that she had spoken with James on the phone during a trial break, and she had asked if James had an outstanding warrant for his arrest. James had responded that he had no warrant because he had hired an attorney and the matter had been "taken care of." (Tr. 708.) The defense counsel requested a continuance to procure James's testimony. Although there was some discussion as to the relevance of James's testimony, no offer of proof was made. The motion for a continuance was denied, as was Dorelle-Moore's motion for a mistrial.

On appeal, Dorelle-Moore contends that the prosecutor overtly or implicitly threatened James that, if he testified for Dorelle-Moore, he would be arrested. Dorelle-Moore asserts that he was thus denied due process, and in support of this contention directs our attention to

5

<u>Diggs v. State</u>, 531 N.E.2d 461 (Ind. 1988). In <u>Diggs</u>, just prior to the presentation of evidence for the defense, the prosecutor had approached a potential witness in the hallway and informed him that, if he testified to the same statements made in his deposition, he would be charged. <u>Id.</u> at 464. The witness had then invoked his Fifth Amendment privilege and refused to testify when called as a witness. <u>Id.</u> On appeal, Diggs contended that the action amounted to prosecutorial misconduct which violated his due process rights guaranteed by the Fifth and Fourteenth Amendments as well as his Sixth Amendment right to compel witnesses in his favor. <u>Id.</u> Although the Court deemed the error harmless, it recognized the impropriety of the prosecutor's conduct:

> Various courts have held such prosecutorial conduct to violate the due process rights guaranteed by the Fifth and Fourteenth Amendments as well as the Sixth Amendment right to compel witnesses in a defendant's favor.
> While a trial court judge may advise a witness of his right to avoid self-incrimination he may not do so in a threatening or browbeating manner. <u>Webb v. Texas</u> (1972), 409 U.S. 95, 93 S. Ct. 351, 34 L. Ed. 2d 330. A prosecutor's warning of criminal charges during a personal interview with a witness improperly denies the defendant the use of that witness's testimony regardless of the prosecutor's good intentions. <u>United States v. Morrison</u> (3<u>rd</u> Cir. 1976), 535 F.2d 223. A prosecutor may not prevent nor discourage a defense witness from testifying. <u>Washington v. Texas</u> (1967), 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019.

<u>Diggs</u>, 531 N.E.2d at 464. However, the Court recognized, "[t]o demonstrate reversible error, appellant must make a plausible showing that the improperly suppressed testimony would have been materially favorable to his defense in a way not merely cumulative to that of available witnesses." <u>Id.</u>

6

Here, assuming that the prosecutor's reference to a warrant for James's arrest effectively discouraged his testimony, Dorelle-Moore did not identify materially favorable testimony to be obtained from James. He made no offer of proof, but it appears from the transcript of the bench conference that James would have been expected to testify that he had obtained from Hamilton a handgun taken from Dorelle-Moore's residence. In his appellant's brief, as before the trial court, Dorelle-Moore provided no explanation of how James's testimony would shed light on a material issue. When the deficiency was noted by the State in its appellee's brief, Dorelle-Moore responded in his reply brief that the testimony would have been relevant to a claim of self-defense.

We find any connection between James's procurement of the weapon and Dorelle-Moore's assertion of self defense to be tenuous at best. The State did not contest that Dorelle-Moore's home had been burglarized and that his property had been taken. There was evidence suggesting that Hamilton might have been involved. Nonetheless, Dorelle-Moore fired nine shots into Claxton, with an eyewitness present. Several other witnesses saw Dorelle-Moore in possession of a gun just after the shooting. The shooting was several hours after the burglary. Dorelle-Moore's comments after the shooting did not indicate that he was motivated by fear, but rather by a need for retaliation. The evidence of Dorelle-Moore's guilt was overwhelming. Here, as in <u>Diggs</u>, any suppression of the witness's testimony was no more than harmless error.

Affirmed.

ROBB, C.J., and MATHIAS, J., concur.

7