**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Jun 12 2013, 9:00 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GREGORY L. FUMAROLO**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAWYAN JAMES TOWNES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1210-CR-441 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy W. Davis, Judge
Cause No. 02D04-1205-FD-703

**June 12, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Jawyan Townes appeals his conviction for possession of marijuana, as a Class D felony, following a jury trial. Townes raises two issues on appeal:

1. Whether the evidence is sufficient to sustain his conviction.

2. Whether the State deprived him of his Sixth Amendment right to a defense by telling a defense witness she would be prosecuted if she continued with her testimony.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the evening of May 16, 2012, the Fort Wayne Police Department received an anonymous telephone call that Townes, who was wanted on an active arrest warrant, was walking near an apartment complex located at Nine Drive in Fort Wayne. A special unit of the Fort Wayne Police Department proceeded to the area in an attempt to serve a warrant on Townes. Detective Robert Hallo, through the use of binoculars, identified Townes, who was wearing a blue Kansas City Royals baseball hat, walking outside of one of the buildings.

Townes began running after he spotted a marked squad car approaching the apartment complex. Detective Martin Grooms, who was already out of his car, shouted, "Stop! Police!" Transcript at 102. Townes, recognizing the police officers closing in on him, ducked into an apartment. Detectives surrounded the apartment and knocked on the door. Michael Corbitt answered. Detective Grooms asked Corbitt if Townes was inside the apartment, and Corbitt answered affirmatively. The detectives went inside the apartment and called for Townes to come out.

2

Townes walked out of the bathroom holding a bottle of vodka that he threw at the officers. One of the officers shot Townes with a Taser, and Townes dropped to the ground. Subsequently, the officers arrested him.

In the bathroom Townes had exited, officers found in the bathtub two cellophane baggies, which contained 42.4 grams of marijuana, and a blue Kansas City Royals baseball hat. After Townes was taken out of the apartment, Virginia Wilkin, who lived in the apartment with her boyfriend, Corbitt, arrived and gave the officers permission to search the apartment.

The State charged Townes with possession of marijuana, a Class D felony, and two counts of resisting law enforcement, Class A misdemeanors. At trial, Sergeant Thomas Strausborger testified that he had asked Wilkin while investigating her apartment if there was marijuana or a baseball hat in the shower the last time she used her bathroom and she responded no. Id. at 175. Sergeant Strausborger also testified that he had asked Corbitt the same question, and that Corbitt had stated that he had taken a shower only one hour before Townes entered the apartment and there was no marijuana or hat in the bathtub at that time. Id. at 175.

Further, Townes called Wilkin as the defense's sole witness. Wilkin testified that detectives had asked her permission to search the apartment. When asked what she had told the police, Wilkin stated, "I hesitated for a minute because I knew there was drugs and paraphernalia in my apartment . . . ." Id. at 228. At that point, the trial court interrupted Wilkins and dismissed the jury, and a lengthy sidebar ensued.

3

The court informed Wilkin of her Fifth Amendment rights, and both the judge and the deputy prosecuting attorney articulated concerns about whether Wilkin understood that she may be incriminating herself. The prosecuting attorney also expressed that he had "an officer sitting right here," a reference that Wilkin could be charged based on her testimony. Id. at 231. Additionally, the trial court stated concern for the witness, saying, "I'm afraid of what she's going to testify to and . . . this detective, he's probably going to turn to the prosecutor and want to take her into custody." Id. at 233. Townes' attorney responded: "here's what I don't feel comfortable with right now. The Court is not intending to do this, but you're now telling the witness who has been advised of her rights and who wants to testify that she might be arrested if she testifies." Id. at 233.

Eventually a deputy public defender came and advised Wilkin. Subsequently, Wilkin asserted her Fifth Amendment privilege against self-incrimination and decided not to testify. At the conclusion of the trial, the jury convicted Townes of all three counts as charged and the trial court sentenced accordingly. Townes now appeals.

## DISCUSSION AND DECISION

### Issue One: Sufficiency of the Evidence

Townes contends that the evidence is insufficient to support his conviction for possession of marijuana. The court cannot reweigh the evidence or judge the credibility of witnesses. Bradley v. State, 765 N.E.2d 204 (Ind. Ct. App. 2002). The court should examine the evidence most favorable to the verdict and all reasonable inferences that may be drawn accordingly. Id. The court will sustain a conviction only when each material

4

element of the charge is supported by evidence in the record from which a rational trier of fact could have found guilt beyond a reasonable doubt. Id.

Indiana has characterized the possession of contraband as either actual or constructive. Henderson v. State, 765 N.E.2d 833, 835 (Ind. 2002). Actual possession occurs when a person has direct physical control over the item. Id. Constructive possession occurs when someone has the (1) intent to maintain dominion and control and (2) the capability to maintain dominion and control over the contraband. Goliday v. State. 708 N.E.2d 4, 6 (Ind. 1999) (citing Lampkins v. State, 685 N.E.2d 698, 699 (Ind. 1997)).

In cases where the accused has exclusive possession of the premises where the contraband is found, an inference is permitted that the accused had knowledge of the contraband and was capable of controlling it. Holmes v. State, 785 N.E.2d 658, 661 (Ind. Ct. App. 2003). However, in cases where the accused has non-exclusive possession of the premises, as in the instant case, the inference is not permitted absent additional circumstances indicating knowledge of the presence of the contraband and the ability to control it. See id. Additional circumstances demonstrating that a person has knowledge of the presence of the contraband and the ability to control it include: 1) incriminating statements by the defendant; 2) attempted flight or furtive gestures; 3) location of substances like drugs in settings that suggest manufacturing; 4) proximity of the contraband to the defendant; 5) location of the contraband within the defendant's plain view; and 6) the mingling of the contraband with other items owned by the defendant. Henderson, 715 N.E.2d at 836. Townes was convicted of non-exclusive constructive

5

possession based upon proof of four of the above circumstances: attempted flight, proximity, plain view, and the mingling of the contraband with defendant's items.

In Collins v. State, police were called to a house where a resident had been shot. 822 N.E.2d 214 (Ind. Ct. App. 2005). After he had attempted to flee, the police entered the home and found Collins, sitting on a couch. The police found a gun on the same couch and two more guns in plain view in a bedroom where many of Collins' personal items were, such as an envelope addressed to Collins, Collins' clothes, and photographs belonging to Collins. This court ruled that there was "substantial evidence that Collins constructively possessed" the firearms. Id. at 223. We held that, although Collins was only a visitor to the residence, the evidence showed that he constructively possessed the firearms because he was sitting in close proximity to one gun, several of his items were found in the bedroom where two other guns were found, and guns were found in plain view. Id. at 222.

The additional circumstances demonstrating constructive possession in Collins are similar to the circumstances in the instant case. Townes fled from the police officers and into a stranger's apartment. When police entered the apartment, Townes came out of the bathroom and stood in the doorway. Townes was the only person to come out of the bathroom. Further, the hat that Detective Hallo had seen Townes wearing earlier was found in the bathtub next to the drugs in plain view. Thus, each of the four additional circumstances were present to indicate that Townes had knowledge of the presence of the contraband and the ability to control it: (1) attempted flight; (2) proximity; (3) plain view; and (4) personal items belonging to Townes resting next to the drugs. See

6

<u>Henderson</u>, 715 N.E.2d at 836.  As was the case in <u>Collins</u>, although Townes was in another person's apartment, the circumstances favorable to the verdict support the inference that he was aware of the marijuana's presence and was the only person capable of controlling it at the time when police encountered him.  <u>See</u>, <u>id.</u>

Still, Townes maintains that the prosecution made no effort to link Townes to the hat found in the bathtub.  The hat was a "fitted" hat, meaning that it was particularly sized to an individual, but the State did not introduce evidence that the hat fit Townes.  Further, there is no evidence that the State examined the hat for a hair sample that would match Townes'.  Nevertheless, these arguments are merely requests for this court to reweight the evidence, which we will not do.

Additionally, Townes cites three Indiana Court of Appeals cases that were reversed because the State failed to show additional circumstances indicating, beyond a reasonable doubt, that a defendant knew the contraband was present.[1]  Townes maintains that his case is analogous to those three cases.  Yet, each of those cases is distinguishable on the facts.  Not one of the cases Townes cites include facts that satisfy any of the additional circumstances required to show constructive possession.  Here, however, four of the additional circumstances are present in the instant case.  Accordingly, the State presented sufficient evidence to support Townes' conviction.

**Issue Two:  Defendant's Sixth Amendment Right to a Defense**

The Sixth Amendment to the Constitution of the United States, along with Article I, Sections 12 and 13 of the Indiana Constitution, provide that a fundamental element of

---

[1] <u>See</u> <u>Brent v. State</u>, 957 N.E.2d 648 (Ind. Ct. App. 2012); <u>Chandler v. State</u>, 816 N.E.2d 464 (Ind. Ct. App. 2004); <u>Smith v. State</u>, 787 N.E.2d 458 (Ind. Ct. App. 2003).

due process of law is the right of an accused to present witnesses in his own defense. Those witnesses must be "free to testify without fear of governmental retaliation." United States v. Hooks, 848 F.2d 785, 799 (7th Cir. 1988) (quoting United States v. Blackwell, 694 F.2d 1325, 1334 (D.C. Cir. 1982)).

The United States Supreme Court has held that errors under the Sixth Amendment are subject to a harmless error analysis. Brecht v. Abrahamson, 507 U.S. 617, 619 (1993). Error is deemed harmless when "there is no substantial likelihood the error contributed to the verdict, or, in other words, that the error was unimportant." Collins, 822 N.E.2d at 221 (quoting Bennett v. State, 787 N.E.2d 938, 944 (Ind. Ct. App. 2003)).

The State first asserts that Townes failed to properly preserve review of this issue by failing to object on Sixth Amendment grounds at trial. A defendant waives review of an issue by failing to make a proper objection on appropriate grounds at trial. Robinson v. State, 730 N.E.2d 185, 193 (Ind. Ct. App. 2000). A trial objection must state the specific ground for objection if it is not apparent from the context. Malone v. State, 700 N.E.2d 780, 784 (Ind. 1998). Further, we prefer to resolve issues on their merits. Shane v. Home Depot USA, Inc., 869 N.E.2d 1232, 1234 (Ind. Ct. App. 2007).

In the instant case, the trial court stopped Wilkin's testimony out of concern that the witness was going to incriminate herself. Townes' counsel then stated, "here's what I don't feel comfortable with right now. The Court is not intending to do this, but you're now telling this witness who has been advised of her rights and wants to testify that she might be arrested if she testifies. I don't think that's fair." Tr. at 233. Though the word "objection" is not stated by the counsel, nevertheless, it is apparent from his words and

8

the context that he is stating a specific objection based on his belief that his ability to present a defense is being jeopardized.

The Indiana Supreme Court has held that a trial court judge may advise a witness of her right to avoid self-incrimination; however, the judge may not do so in a threatening or browbeating manner. Diggs v. State, 531 N.E.2d 461, 464 (Ind. 1988) (citing Webb v. Texas 409 U.S. 95, 99 (U.S. 1972)). Furthermore, a prosecutor's warning of criminal charges during a personal interview with a witness improperly denies the defendant the use of that witness's testimony regardless of the prosecutor's good intentions. Diggs, 531 N.E.2d at 464. A prosecutor may not prevent nor discourage a defense witness from testifying. Id.

In the instant case, the trial court stopped Wilkin's testimony after she stated that she knew there were drugs and paraphernalia in her apartment. The court advised Wilkin that anything she said could be used against her, and, therefore, his recommendation was for her to consult a lawyer on how to proceed. There were no threatening words or browbeating from the court. The nearest the court came to a threat was when it stated, "I'm afraid of what she's going to testify to and . . . I know this detective, that he's probably going to turn to the prosecutor and want to take her into custody." Tr. at 233. That statement was neither threatening nor browbeating because, in the context of the rest of the transcript, it is clear that the court's concern was that Wilkin know her rights. Further, after speaking with Wilkin several times about her rights, the trial court stated that it was prepared to move forward with the testimony. Id. at 234.

9

The prosecutor's statement, however, is another story and is analogous to <u>Collins</u>. In <u>Collins</u>, the defendant also asserted that he was denied his right to call witnesses guaranteed under the Sixth Amendment to the United State Constitution. 822 N.E.2d at 220. Wyneka Blount, the owner of the home, had told the prosecutor that she was going to testify that the gun found on the couch where Collins had been sitting belonged to her and that the two guns in the back room belonged to someone other than Collins. The prosecutor told Blount that if she testified to those things, he would arrest her "the moment she stepped off the witness stand." <u>Id.</u> at 220. Blount then consulted an attorney who advised her not to testify, and she took his advice. On appeal, we held that the prosecuting attorney violated Collin's Sixth Amendment right to obtain witnesses in his favor. <u>Id.</u> at 221. However, we went on to say that the prosecutor's act was harmless error because it was unlikely that the error contributed to the verdict. <u>Id.</u> at 221; <u>see also</u> <u>Shouse v. State</u>, 849 N.E.2d 650 (Ind. Ct. App. 2006) (denying a mistrial because, even though the deputy prosecutor intimidated a defense witness, that error was harmless considering the overwhelming evidence of guilt).

Here, the prosecutor said that a police officer sitting in the court-room was ready to arrest Wilkin if she said anything incriminating in her testimony. This could reasonably be construed as intimidating and threatening and, thus, in violation the Sixth Amendment. Nevertheless, we hold that any error here was harmless.

Prior to exercising the Fifth Amendment, Wilkin testified that there were drugs in her apartment, but they were her boyfriend's and were located "in his room," as opposed to any other location in the house, such as the bathtub. Tr. at 230. Further, Sergeant

10

Strausborger testified at trial that he had asked Wilkin if there was marijuana or a baseball hat in the shower the last time she used her bathroom and she responded no. Id. at 175. Sergeant Strausborger testified that he had asked Corbitt the same question, and that Corbitt had stated that he had taken a shower only one hour before Townes entered the apartment and there was no marijuana or hat in the bathtub at that time. Id. at 175. Based on the testimony by Wilkin and Sergeant Strausborger, even if Wilkin had testified that the drugs in the bathtub could have been her boyfriend's, this testimony would have been contradicted by several statements she had already made both to the jury and to Sergeant Strausborger. Thus, we hold that any Sixth Amendment violation was harmless error.

## Conclusion

The State presented sufficient evidence to sustain Townes' conviction for possession of marijuana, a Class D Felony, and any error committed by the State under the Sixth Amendment was harmless.

Affirmed.

BAILEY, J., and BARNES, J., concur.