## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 19 2021, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ricky Levale Johnson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | January 19, 2021 <br><br> Court of Appeals Case No. <br> 20A-CR-1150 <br><br> Appeal from the Tippecanoe <br> Circuit Court <br><br> The Honorable Sean M. Persin, <br> Judge <br><br> Trial Court Cause No. <br> 79C01-1901-F2-4 |

**Baker, Senior Judge.**

# Statement of the Case

Community corrections officers found a handgun during a search of probationer Ricky Levale Johnson's home, and a subsequent search by police officers also uncovered controlled substances. Johnson appeals his convictions of unlawful possession of a firearm by a serious violent felon, a Level 4 felony;[1] possession of a narcotic drug, a Level 5 felony;[2] maintaining a common nuisance, a Level 6 felony;[3] and possession of marijuana, a Class B misdemeanor.[4] We affirm.

# Issue

Johnson raises one issue, which we restate as: whether the trial court erred in denying Johnson's motion for mistrial, in which he alleged the State had failed to timely disclose exculpatory evidence.

# Facts and Procedural History

In January 2019, Johnson lived in an apartment with his then-wife, Michelle Reagan,[5] and her young son. Reagan's name was on the lease. Johnson and

---

[1] Ind. Code § 35-47-4-5 (2018).

[2] Ind. Code § 35-48-4-6 (2014).

[3] Ind. Code § 35-45-1-5 (2018).

[4] Ind. Code § 35-48-4-11 (2018).

[5] At trial, Reagan spelled her last name as set forth above. During a pretrial deposition, she spelled her last name as "Reagin." Appellant's App. Vol. II, p. 149. We use the spelling she provided at trial.

Reagan shared the master bedroom, and Reagan's son slept in the other bedroom.

[4] Johnson was on home detention and subject to supervision by Tippecanoe County Community Corrections ("TCCC"). He had agreed to comply with numerous conditions when he was placed on home detention, including: (1) refraining from consuming alcohol; (2) submitting to drug and alcohol tests on request; (3) refraining from possessing dangerous or deadly weapons; (4) wearing a GPS monitoring device; and (5) waiving his right to object to searches of his residence. Reagan, as the lessor, had also signed a consent form permitting TCCC officers to search the apartment. She owned a handgun, but she did not keep it at the apartment.

[5] On January 17, 2019, Reagan left the apartment after an argument with Johnson. She did not return home that day or the next. Instead, she called 911, reporting that Johnson had violated the terms of his home detention placement and asking that he be removed from the apartment. Specifically, she reported Johnson possessed a gun and alcohol.

[6] On January 19, TCCC Officers Clinton Delph and James Knogge arrived at Johnson's home to investigate Reagan's report. Johnson allowed the officers to enter. He submitted to a portable breath test and tested positive for alcohol, after which he admitted to drinking alcohol. Next, the officers asked Johnson "if there was anything else in the home that would get him in trouble." Tr. Vol. 3, p. 17. He was "somewhat evasive" and would not "confirm or deny"

whether there was anything else in the residence that would violate the conditions of his home detention placement. *Id.*

[7] The officers spotted a bottle of alcohol in the kitchen. Next, Knogge performed a safety sweep of the residence, looking for potentially dangerous items, while Delph and Johnson remained in the living room. Knogge went upstairs and entered "the main bedroom," *id.* at 18, where he smelled an odor of marijuana and saw a handgun, a wallet, and "a lot of cash" on the bed. *Id.* The wallet contained Johnson's identification. The charging device for Johnson's GPS unit was also in the room.

[8] After finishing the sweep, Delph handcuffed Johnson. Next, Knogge read Johnson his Miranda rights, and the officers questioned him. He said there was approximately $1,000 in cash on the bed, but when asked about the handgun, he claimed Reagan had a "personal protection license." *Id.* at 19.

[9] Delph and Knogge called the Lafayette Police Department ("LPD"). Officer John Dale and two other officers arrived to search the apartment in more detail. Officer Dale searched the main bedroom, where he found a bag of syringes and a grinder that contained marijuana residue. Another officer assisting Dale found two bags of marijuana and two types of pills in the main bedroom. Subsequent testing revealed that some of the pills contained amphetamine.

[10] Officer Dale transported Johnson to jail. During the booking process, jail staff searched Johnson and discovered on his person a baggie containing brown powdery material. Officer Dale believed the material was a controlled

substance and took it to the police department. Subsequent testing revealed the brown powdery substance consisted of 8.51 grams of heroin.

On January 24, 2019, the State charged Johnson with dealing in a narcotic drug (heroin), a Level 2 felony; possession of a narcotic drug (heroin) with a gun, a Level 3 felony; possession of a controlled substance (amphetamine) with a gun, a Level 6 felony; possession of marijuana, a Class B misdemeanor; maintaining a common nuisance, a Level 6 felony; unlawful possession of a firearm by a serious violent felon, a Level 4 felony; and possession of a syringe, a Level 6 felony.

On July 24, 2019, the trial court granted the State permission to amend the charging information, resulting in the following revised list of charges:

| Count | Offense | Level of Offense |
| --- | --- | --- |
| I | dealing in a narcotic drug (heroin) with a gun | Level 2 felony |
| II | dealing in a narcotic drug (heroin) | Level 3 felony |
| III | possession of a narcotic drug (heroin) and a gun | Level 4 felony |
| IV | possession of a narcotic drug (heroin) | Level 5 felony |
| V | possession of a controlled substance (amphetamine) and a gun | Level 6 felony |
| VI | possession of marijuana | Class B misdemeanor |

| VII | maintaining a common nuisance | Level 6 felony |
| VIII | unlawful possession of a syringe | Level 6 felony |
| IX | unlawful possession of a firearm by a serious violent felon | Level 4 felony |

[13] Prior to trial, Johnson admitted that he had a predicate felony conviction for purposes of the charge of unlawful possession of a handgun by a serious violent felon. The trial court presided over a jury trial on December 10, 11, and 12, 2019. Johnson testified, claiming he was unaware of the controlled substances, paraphernalia, and handgun that the officers found in the master bedroom because he had been sleeping in another room. He further claimed someone had planted the heroin on him prior to the search at the jail.

[14] The jury was unable to reach a verdict on the two charges of dealing in controlled substances, and the trial court declared a mistrial as to those charges. The jury determined Johnson was not guilty of Count V, possession of a controlled substance (amphetamine) with a gun, and Count VIII, unlawful possession of a syringe. The jury determined Johnson was guilty of the remaining five charges.

[15] Next, the State moved to dismiss the dealing charges, and the trial court granted the motion. On February 25, 2020, prior to sentencing, Johnson filed a motion for mistrial, requesting a new trial. He claimed the State had failed to disclose

prior to trial that Reagan was under investigation for allegedly dealing in heroin, and that timely disclosure of that information would have changed the outcome of his trial.

[16] On May 15, 2020, the trial court held a sentencing hearing, during which it received evidence in relation to Johnson's motion for mistrial and denied the motion. Next, the court declined to enter judgment on Count III, possession of a narcotic drug (heroin) and a gun as a Level 4 felony, based on double jeopardy concerns. The court imposed sentences on the four remaining guilty verdicts: possession of a firearm by a serious violent felon, a Level 4 felony; possession of a narcotic drug (heroin), a Level 5 felony; maintaining a common nuisance, a Level 6 felony; and possession of marijuana, a Class B misdemeanor. This appeal followed.

## Discussion and Decision

[17] Johnson argues the trial court should have granted his post-trial request for a new trial because the State failed to timely disclose material evidence, specifically that Reagan was under investigation for dealing in heroin when she testified at his trial. In general, we review a motion for mistrial for an abuse of discretion. *Dorelle-Moore v. State*, 968 N.E.2d 287, 289 (Ind. Ct. App. 2012). But Johnson alleges a violation of his right to due process, and we apply a de novo standard of review to constitutional claims. *See Speers v. State*, 999 N.E.2d 850, 852 (Ind. 2013) (applying de novo review to Speers' claim of a constitutional violation in the admission of evidence).

In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963), the United States Supreme Court determined, "[w]e now hold that the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The Court later clarified that the prosecution's duty to disclose applies "even though there has been no request by the accused," and "the duty encompasses impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280, 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286 (1999).

There are three elements of a *Brady* violation: (1) the evidence at issue must be favorable to the accused; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the suppressed evidence is material to the case. *Davis-Martin v. State*, 116 N.E.3d 1178, 1189 (Ind. Ct. App. 2019), *trans. denied*. We resolve Johnson's claim on the question of materiality.[6] Evidence is material to a case "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *U.S. v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481 (1985). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

---

[6] The State argues that the prosecutor did not suppress evidence for purposes of the *Brady* analysis. We do not need to address this argument.

[20] The evidence presented at the sentencing hearing in relation to Johnson's motion demonstrates that, in July 2019, prior to Johnson's trial, officers with the LPD had supervised a confidential informant who had allegedly purchased heroin from Reagan. No charges were filed against Reagan until after Johnson's trial. Further, Johnson points to no evidence that Reagan was aware she was under criminal investigation when she testified at his trial.

[21] Johnson claims that if the prosecutor had disclosed prior to trial that Reagan was under investigation for dealing in heroin, he could have impeached her with that information, thereby supporting his defense that the contraband found in his apartment did not belong to him. We must weigh the value of the undisclosed evidence in the context of all the evidence presented at trial to determine whether the nondisclosure undermined confidence in the jury's verdict.

[22] There is substantial evidence of Johnson's guilt, even if one does not consider Reagan's testimony. Two days after Reagan left the apartment she shared with Johnson, a TCCC officer searching the apartment spotted a handgun in plain sight on Johnson's bed, along with Johnson's wallet and a quantity of cash. The officer also smelled marijuana in the bedroom, where Johnson kept the charging unit for his monitoring device. Under questioning by the officers, Johnson indicated he was aware of the money, and he did not express surprise at the presence of the handgun, indicating only that Reagan had a gun license. Further, an LPD officer later found marijuana in the bedroom. Finally, jail

officers found heroin on Johnson's person during a search. Johnson is not challenging the sufficiency of the evidence supporting his convictions.

[23] Reagan testified at trial and in a deposition prior to trial that she had no knowledge of any controlled substances in the apartment and did not keep her handgun there. Any impeachment value that may be ascribed to the evidence that she allegedly sold heroin in July 2019 is outweighed by the following circumstances: (1) the jury acquitted Johnson of both charges of dealing in controlled substances and convicted him of only possession offenses, rendering Reagan's alleged dealing in heroin less relevant to the case; (2) the heroin which the jury convicted Johnson of possessing was found on his person, not hidden in the apartment; and (3) the controlled buy in which Reagan was allegedly involved occurred over six months after officers searched Johnson's apartment. There is no evidence that the police were investigating Reagan for dealing in or possessing controlled substances in January 2019.

[24] In light of all the evidence presented at trial, we conclude Johnson has failed to establish that, if the State had disclosed to Johnson prior to trial that Reagan had been under investigation for dealing in heroin in July 2019, there is a reasonable probability that the outcome of the trial would have been different. *See Carroll v. State*, 740 N.E.2d 1225, 1230 (Ind. Ct. App. 2000) (State's failure to disclose witness's misdemeanor conviction was not a *Brady* violation; in the context of all the evidence presented at trial, the conviction was not material evidence); *trans. denied*.

# Conclusion

[25] For the reasons stated above, we affirm the judgment of the trial court.

[26] Affirmed.

Najam, J., and Crone, J., concur.