**William COLLINS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0312–CR–1044.

Court of Appeals of Indiana.

Feb. 9, 2005.

Transfer Denied April 7, 2005.

Jeffrey A. Baldwin, Baldwin & Dakich, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Stephen Tesmer, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

William Collins appeals his convictions for Possession of a Firearm by a Serious Violent Felon and Possession of Cocaine following a jury trial. He presents the following issues for our review:

1. Whether the trial court abused its discretion when it admitted evidence obtained following a warrantless residential entry.

2. Whether the trial court abused its discretion when it denied his motion for mistrial based on alleged prosecutorial misconduct.

We affirm and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

At approximately 2:30 a.m. on August 30, 2003, Collins, Wyneka Blount, Demetrius Tate, Brandon Spinks, and Blount's sister, were all inside a house located at 3030 North Gladstone Avenue in Indianapolis. Police received an anonymous tip that someone at the residence had been shot. Police first went to the location of the payphone that was used to call in the tip, but they did not find the tipster. Police then approached the residence, saw someone peek through a window blind, and heard that person yell "Police!" Transcript at 83. At that point, police heard a commotion inside, as people began running throughout the house.

One of the officers ran toward the back of the house, but stopped to look into a kitchen window when he saw two men inside. The two men were crouched near a kitchen cabinet, and the officer saw that one of the men had a stack of cash and a gun in his hands. The officer yelled at the man to drop the gun and ordered both

men to lie on the floor, but the men got up and tried to exit the house through the back door. When the men were unable to open that door, they returned to the kitchen and complied with the officer's commands. At that point, the officer yelled at the other officers to force their way into the house.[1] Once inside, officers saw Collins sitting on a couch in the living room, and they ordered him to lie on the floor. Officers subsequently found a handgun on the couch where Collins had been sitting.

After each of the occupants was secured, police obtained a search warrant for the house. Officers found cocaine, marijuana, a digital scale, plastic baggies, guns, and money in the course of their search. When officers searched one of the two bedrooms, they found women's clothing, large-sized men's clothing,[2] an envelope addressed to Collins,[3] and some Polaroid photographs that belonged to Collins. In that bedroom, officers also found, in plain view, an SKS rifle leaning up against a wall and a black semi-automatic handgun sitting on top of a cabinet. During a pat-down search, officers found several sets of keys in Collins' pockets, including a key to the Gladstone Avenue residence and keys

to two vehicles parked outside the residence. During a subsequent search of Collins at a detention center, officers found a baggie containing cocaine on the floor next to him.

The State charged Collins with possession of a firearm by a serious violent felon, possession of cocaine with a firearm, possession of cocaine, and possession of marijuana. Collins moved to suppress the evidence obtained after police forced their way into the house without a warrant, but the trial court denied that motion following a hearing. A jury found Collins guilty of all of the charges except for the possession of marijuana charge.[4] The trial court entered judgment of conviction on the possession of firearm by a serious violent felon and possession of cocaine charges[5] and sentenced Collins to twenty years, with five years suspended. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Warrantless Entry

■ Collins contends that the trial court erred when it denied his motion to suppress the evidence. Specifically, Collins

---

1. After the officer had initially alerted the other officers to the presence of a gun inside, officers standing at the front door began to knock on the door and shouted, "Police!" Transcript at 37.

2. Officer William Sage testified that he found the following men's clothing items in the bedroom: pants with a waist size of 50 or higher, and t-shirts sized 3XL. The evidence shows that Collins was the only person found in the house at the time of the search who would have fit that size clothing.

3. The envelope was addressed to Collins at his mother's home address. As we note, *infra*, Collins presented evidence that he lived with his mother and was not a resident of the house on Gladstone Avenue.

4. Collins stipulated to his serious violent felon status.

5. Collins states in his brief on appeal that the trial court "merged" the possession of cocaine and a firearm count into the possession of a firearm by a serious violent felon count at sentencing. Brief of Appellant at 2. Our review of the CCS indicates that the trial court entered judgment of conviction for both of those verdicts related to Collins' possession of a firearm, which is improper. *See, e.g., Kochersperger v. State*, 725 N.E.2d 918, 925–26 (Ind.Ct.App.2000) (holding trial court should have vacated conviction instead of merging it into another count to avoid double jeopardy violation). As such, we remand with instructions to the trial court to vacate Collins' conviction for possession of cocaine and a firearm.

maintains that the evidence was obtained pursuant to a warrantless entry, which violates his rights under the United States and Indiana Constitutions. The State asserts that the warrantless search was justified under the circumstances and was, therefore, consistent with both the federal and state constitutions.[6] We agree with the State.

 Although Collins originally challenged the admission of the evidence through a motion to suppress, he appeals following a completed trial and challenges the admission of such evidence at trial. "Thus, the issue is ... appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Washington v. State,* 784 N.E.2d 584, 587 (Ind.Ct.App.2003). We have indicated that our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Ackerman v. State,* 774 N.E.2d 970, 974–75 (Ind.Ct.App.2002), *trans. denied.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Overstreet v. State,* 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *trans. denied.* However, we must also consider the uncontested evidence favorable to the defendant. *See id.*

## Fourth Amendment

 The trial court found that the State had demonstrated that exigent circumstances justified the warrantless entry. There are limited exceptions to the warrant requirement under the Fourth Amendment. *See Smock v. State,* 766 N.E.2d 401, 404 (Ind.Ct.App.2002). The State bears the burden of proving that an exception to the warrant requirement exists when a warrantless search is conducted. *Id.* A well-recognized exception to the warrant requirement is when exigent circumstances exist. *Id.* Under the exigent circumstances exception, police may enter a residence if the situation suggests a reasonable belief that someone inside the residence is in need of aid. *Id.; Vitek v. State,* 750 N.E.2d 346, 349 (Ind.2001).

Collins maintains that the State has not met its burden to show that exigent circumstances existed at the time officers forced their way into the house.[7] In particular, Collins asserts that the police failed to corroborate the anonymous tip. But we agree with the State that the evidence supports a determination that exigent circumstances existed to justify the warrantless entry.

The evidence shows that the officers were investigating whether someone inside the Gladstone residence was in need of aid. Detective Shaffer testified that when the officers approached the residence, some-

6. The State also asserts that Collins does not have standing to challenge the warrantless entry under either the federal or state constitutions. But our review of the record indicates that during the suppression hearing, neither party had an opportunity to argue the issue of whether Collins had an expectation of privacy at the time he was arrested. The trial court found that there were exigent circumstances to justify the warrantless entry and that whether Collins had standing to assert a constitutional challenge was of no moment. Because the State did not present any evidence on the issue or secure a ruling from the trial court, the State has not preserved the standing issue for our review on appeal. *See Sisk v. State,* 785 N.E.2d 271, 274 (Ind.Ct. App.2003).

7. In making his argument under the Fourth Amendment, Collins makes no contention that Detective Shaffer conducted an illegal search when he looked through the kitchen window. Nor does Collins maintain that the officers were trespassing when they came onto the property, as he asserts under his state constitutional claim. *See infra.*

one inside alerted the others to the police presence, and he heard people running toward the back of the house. Detective Shaffer then followed a sidewalk that led to the back of the house to see if the occupants were exiting through the back door. *See, e.g., Divello v. State,* 782 N.E.2d 433, 438 (Ind.Ct.App.2003) (noting "those coming on truly pressing or emergency matters could reasonably be expected to seek out residents through areas other than the front door."). On his way to the back door of the house, he observed, through a kitchen window,[8] a man holding a gun. At that point, Detective Shaffer's observations corroborated the tip that someone may have been shot and justified the warrantless entry on the basis of exigent circumstances. *See, e.g., Sayre,* 471 N.E.2d at 715 (holding warrantless entry justified where police saw people leaving room carrying drug paraphernalia after alerted to police presence; police reasonably believed evidence was being removed or destroyed justifying "prompt action"). As such, the officers' entry did not violate the Fourth Amendment.

## Article I, Section 11

█ Collins also contends that the warrantless entry violated Article I, Section 11 of the Indiana Constitution. We have previously held that Article I, Section 11 must be liberally construed to protect Hoosiers from unreasonable police activity in private areas of their lives. *State v. Stamper,* 788 N.E.2d 862, 865 (Ind.Ct.App.2003), *trans. denied.* Rather than looking to federal requirements such as warrants and probable cause when evaluating Section 11 claims, we place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable. *Id.*

Collins maintains that the "police were trespassing when they entered the property without reasonable suspicion [or] probable cause, as demonstrated by the admittedly uncorroborated anonymous call." Brief of Appellant at 6. In support of that contention, Collins cites to Indiana case law regarding the reasonableness under Article I, Section 11 of the Indiana Constitution of police searches of garbage left outside residences. In those cases, namely, *Moran v. State,* 644 N.E.2d 536 (Ind. 1994), *Stamper,* 788 N.E.2d at 862, and *Bell v. State,* 626 N.E.2d 570 (Ind.Ct.App. 1993), *trans. denied,* our courts focused on the homeowner's reasonable expectation of privacy with respect to his garbage. In *Moran* and *Bell,* our courts held that where the officers did not trespass onto the homeowners' properties when they seized the garbage, the homeowners had no reasonable expectation of privacy and the search was reasonable. But in *Stamper,* this court held that a homeowner had a reasonable expectation of privacy with respect to two garbage bags "located on his own property such that police had to enter his property" to seize the bags. 788 N.E.2d at 867.

But Collins ignores our conclusion in *Stamper,* namely, that "*absent exigent circumstances,* the police will need a search warrant based on probable cause" before searching garbage located on private property. *Id.* (emphasis added). Indeed, our case law is clear that, like the Fourth Amendment, there is an exigent circumstances exception to the warrant requirement under Article I, Section 11 of the Indiana Constitution. *See, e.g., Moran,* 644 N.E.2d at 539 (noting that the "reasonableness standard explains the requirement that, absent exi-

---

**8.** Detective Shaffer testified that the window was partially covered with a "thin sheet" that was "see[-]through." Transcript at 112.

gent circumstances, the police must 'knock and announce' before conducting a search[.]"); *Willis v. State,* 780 N.E.2d 423, 428 (Ind.Ct.App.2002). Nothing in our case law indicates, and Collins makes no contention, that our analysis of exigent circumstances under the state constitution differs from that under the federal constitution. Because we have already held that exigent circumstances existed to justify the officers' warrantless entry under the Fourth Amendment, we need not make a separate analysis here. In light of the exigent circumstances, we hold that the warrantless entry was reasonable under the totality of the circumstances under Article I, Section 11 of the Indiana Constitution.[9]

### Issue Two: Mistrial

■ Collins next contends that the trial court abused its discretion when it denied his motion for mistrial. Specifically, Collins maintains that a mistrial was warranted because the Prosecutor had threatened one of his witnesses, Blount, which led to her refusal to testify at trial. Collins asserts that he was denied his right to call witnesses guaranteed under the Sixth Amendment to the United States Constitution.

■ A fundamental element of due process of law is the right of an accused to present witnesses in his own defense. *United States v. Hooks,* 848 F.2d 785, 799 (7th Cir.1988). Those witnesses must be "free to testify without fear of governmental retaliation." *Id.* (quoting *United States v. Blackwell,* 694 F.2d 1325, 1334 (D.C.Cir. 1982)). While a trial court judge may

advise a witness of his right to avoid self-incrimination, he may not do so in a threatening or browbeating manner. *Diggs v. State,* 531 N.E.2d 461, 464 (Ind. 1988), *cert. denied,* 490 U.S. 1038, 109 S.Ct. 1939, 104 L.Ed.2d 410 (1989). A prosecutor's warning of criminal charges during a personal interview with a witness improperly denies the defendant the use of that witness's testimony regardless of the prosecutor's good intentions. *Id.* A prosecutor may not prevent nor discourage a defense witness from testifying. *Id.*

In this case, in support of his motion for mistrial, Collins informed the trial court that the Prosecutor had interviewed Blount, in her home, regarding her potential testimony. During that interview, Blount explained to the Prosecutor that she would testify that the gun found on the couch where Collins had been sitting belonged to her and that the SKS rifle found in the bedroom belonged to someone other than Collins. Blount also stated that she "rented the house" and had just given Collins a key to the house for the first time earlier that day. Transcript at 240. Then the Prosecutor told Blount that if she testified to those things, he would arrest her "the moment she stepped off the witness stand." *Id.* at 241. At some point during the trial, Blount left a voice mail message for Collins' counsel telling him that she did not know whether she would testify. Thereafter, Blount consulted an attorney who advised her not to testify, and she took his advice.

In responding to Collins' motion for mistrial, the Prosecutor admitted that he told

---

**9.** Despite his contention that police were "trespassing" when they came onto the Gladstone property, Collins avers that "[a] health and welfare check, a service police perform with some regularity, was available to resolve any question about a person shot, and was in fact the proper and constitutional thing to have done." Appellant's Brief at 8. Thus, in essence, Collins concedes that the officers had a right to enter onto the property in the first instance. We note that Collins does not develop any argument or cite to relevant authority in support of his statement that Detective Shaffer's "setting foot ... up near the kitchen window was constitutionally prohibited." *Id.* at 6.

Blount he would arrest her on three charges if she testified to the things she had stated. The Prosecutor stated as follows:

> I and Detective Tammy Kunz on October 21st visited Ms. Blount, who very edgily told me essentially the conjured and coached version of events that [Collins' counsel] had worked with ... [her] in his office under the suggestion that if she took responsibility for all these actions, then she would only get—she would at most get probation. What I told her ... [is that] at the conclusion of what she told me, that if she said those things under oath, on this witness stand, that I would have her arrested. Not for perjury, ... [but that] she would be arrested for what she told me. And that is—possession of cocaine with a firearm—which is a Felony C—as well as possession of cocaine as a Felony D and possession of marijuana as a Misdemeanor A. That is what I told her she would be arrested for....

*Id.* at 241.

■ Our case law is clear that this type of threat violates the Sixth Amendment. *See Diggs,* 531 N.E.2d at 464. Indeed, a defendant's " 'right to present his own witnesses to establish a defense ... is a fundamental element of due process of law.' " *Allen v. State,* 813 N.E.2d 349, 361 (Ind.Ct.App.2004) (quoting *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)), *trans. denied.* But, as the United States Supreme Court has held, " 'some constitutional errors ... are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless.' " *Brecht v. Abrahamson,* 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting

*Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); *see also* Ind. Trial Rule 61 (stating if an error is not "inconsistent with substantial justice" it is harmless). The Court has expressly held that errors under the Sixth Amendment are subject to harmless error analysis. *See Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Error is deemed harmless when "there is no substantial likelihood the error contributed to the verdict, or, in other words, that the error was unimportant." *Bennett v. State,* 787 N.E.2d 938, 944 (Ind.Ct.App.2003), *trans. denied.*

Initially, we note that Blount's proffered testimony made no reference to any of the cocaine police seized after the warrantless entry.[10] And her testimony suggesting that Collins did not live in the house was merely cumulative of Collins' and Collins' mother's testimony that he did not live there. *See, e.g., Diggs,* 531 N.E.2d at 464 (holding improperly suppressed testimony harmless error because no showing it "would have been materially favorable to his defense in a way not merely cumulative to that of available witnesses"); *Turner v. State,* 720 N.E.2d 440, 446 (Ind.Ct.App. 1999) (holding no reversible error where excluded expert testimony was merely cumulative of other evidence). As such, Collins cannot show any prejudice as a result of Blount's refusal to testify with regard to his possession of cocaine conviction.

■ Next, we address whether Blount's proffered testimony was so important and significant to Collins' case regarding his possession of a firearm by a serious violent felon conviction that the error cannot be deemed harmless. First, we note that Blount's proffered testimony did not

---

10. Regardless, Collins was not charged with possession of any specific amount of cocaine, so his conviction on that charge could rest solely on his possession of the cocaine found on the floor at the detention center.

mention the semi-automatic handgun found in the bedroom. According to Collins' counsel, Blount was going to testify regarding the SKS rifle and the handgun found on the couch in the living room, but nothing in the record before us indicates that she would have testified regarding the semi-automatic handgun found in the bedroom. Thus, Collins has not shown that he was deprived of his right to present a defense with regard to the evidence showing that he constructively possessed the semi-automatic handgun.

Second, Blount's proffered testimony was that the gun found on the couch "was hers" and that the SKS rifle "was brought into the house by someone other than Mr. Collins." Transcript at 240. While her testimony would have addressed the ownership of those two guns, there is nothing in the record showing that she would have testified about why Collins was found sitting on the handgun or why the SKS rifle was in the bedroom along with Collins' personal belongings. In other words, regardless of the guns' ownership, there is substantial evidence that Collins constructively possessed the guns.

■■■■■ Possession of contraband is characterized as either actual or constructive. *Henderson v. State,* 715 N.E.2d 833, 835 (Ind.1999). Constructive possession occurs when someone has "the intent and capability to maintain dominion and control over the item." *Id.* (quoting *Walker v. State,* 631 N.E.2d 1, 2 (Ind.Ct.App.1994)). Essentially, in cases where the accused has exclusive possession of the premises on which the contraband is found, an inference is permitted that he or she knew of the presence of contraband and was capable of controlling it. *Person v. State,* 661 N.E.2d 587, 590 (Ind.Ct.App.1996), *trans. denied.* But when possession of the premises is non-exclusive, the inference is not permitted absent some additional circumstances indicating knowledge of the presence of the contraband and the ability to control it. *Id.* Among the circumstances which will support such an inference are: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) contraband in plain view; and (6) location of the contraband is in close proximity to items owned by the defendant. *Id.* These circumstances apply to show constructive possession even where the defendant is only a visitor to the premises where the contraband is found. *See Ledcke v. State,* 260 Ind. 382, 296 N.E.2d 412, 416 (1973).

Even assuming that Collins were only a visitor to the Gladstone residence, as he contends, the evidence shows that he constructively possessed the semi-automatic handgun and SKS rifles in the bedroom, as well as the handgun found on the couch. The State presented evidence that several items of Collins' personal property were found in the bedroom where the semi-automatic handgun and SKS rifle were found in plain view. Those items consisted of an envelope addressed to Collins,[11] photos of Collins and his friends,[12] and men's clothing in Collins' size. In addition, the State presented evidence that Collins had been sitting on the handgun police subsequently found on the couch. We think it would be difficult to sit on a handgun without knowledge of its presence and without the intent and ability to exercise dominion and control over the handgun. *See Person,* 661 N.E.2d at 590.

11. That envelope contained a notice to Collins from the BMV and a letter regarding Collins' probation.

12. Collins testified that the photos belonged to him.

The State had to prove only that Collins possessed one of the three firearms.[13] Again, Blount's proffered testimony shows that she was not going to testify regarding the semi-automatic weapon found in the bedroom. And regardless of who owned the other two firearms, there is substantial evidence that Collins constructively possessed all three firearms. While Collins was improperly denied his Sixth Amendment right to present Blount's testimony, her testimony would not have prevented Collins' conviction on the weapons charge. The evidence against Collins is substantial, and Blount's proffered testimony is relatively insignificant in comparison.[14] We hold that the Sixth Amendment violation was harmless error.

Affirmed and remanded with instructions.

SULLIVAN, J., and BARNES, J., concur.

13. The State charged Collins with possession of "a handgun and/or a rifle." State's Exhibit 12.

14. Collins' counsel admitted to the trial court that Blount's counsel had told him that Blount's testimony "could potentially be damaging to Mr. Collins." Transcript at 241.