891 N.E.2d 146 (2008)
A.M., Appellant-Defendant,
v.
STATE of Indiana, Appellee-Plaintiff.
No. 49A05-0801-JV-19.
Court of Appeals of Indiana.
July 31, 2008.
*148 Cara Schaefer Wieneke, Indianapolis, IN, Attorney for Appellant.
Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
MATHIAS, Judge.
A.M. was adjudicated a delinquent child in Marion Superior Court for carrying a handgun without a license, a Class A misdemeanor if committed by an adult. A.M. appeals and argues that the juvenile court abused its discretion when it admitted the handgun into evidence. Concluding that the handgun was properly admitted because the pat-down search which led to its discovery was not conducted in violation of the Fourth Amendment and Article I, Section 11 of the Indiana Constitution, we affirm.

Facts and Procedural History
On November 9, 2007, at approximately 1:00 a.m., Indianapolis Metropolitan Police Officers Gregory Kessie and David Kinsey were on patrol near the intersection of Lincoln and Kennington because they had received reports of gunshots fired in the area between 10:00 p.m. and midnight. While on patrol, the officers observed two young men walking down the street. Officer Kessie pulled his vehicle over to the side of the street because he believed that they were violating curfew.
Officer Kinsey recognized A.M. and knew that he was a juvenile. Officer Kinsey had previously issued him a summons for a curfew violation, was working one night when A.M. was shot in the leg, and knew that A.M. frequented the area with other individuals that the officer had arrested. Tr. p. 14.
After Officer Kessie parked his vehicle, A.M. and his companion approached the passenger side where Officer Kinsey was sitting. Officer Kessie immediately got out of the vehicle, directed A.M. and his companion away from the vehicle and performed pat-down searches on A.M. and his friend. During the search, Officer Kessie found a handgun in A.M.'s right front pocket.
Later that same day, a petition was filed alleging that A.M. was a delinquent child for carrying a handgun without a license, a Class A misdemeanor if committed by an adult. A.M. filed a motion to suppress the handgun. The juvenile court denied the motion, and on December 11, 2007, A.M. was adjudicated a delinquent child. The court awarded the Department of Correction wardship over A.M., suspended the commitment and placed him on probation for six months. A.M. now appeals.

Discussion and Decision
A.M. claims that the pat-down search was conducted in violation of the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution, and therefore, the juvenile court abused its discretion when it admitted the handgun into evidence. A.M. initially challenged the admission of the handgun through a motion to suppress. However, he is appealing from a completed trial, and therefore, the issue is "appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." Collins v. State, 822 N.E.2d 214, 218 (Ind.Ct.App. *149 2005), trans. denied. Our standard of review on the admissibility of evidence "is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection." Id. "We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. However, we must also consider the uncontested evidence favorable to the defendant." Id. We will affirm the trial court's ruling if it is supported by substantial evidence of probative value. Creekmore v. State, 800 N.E.2d 230, 233 (Ind.Ct.App.2003).

A. A.M.'s Fourth Amendment Claim.

The Fourth Amendment protects persons from unreasonable search and seizure, and this protection has been extended to the states through the Fourteenth Amendment. Berry v. State, 704 N.E.2d 462, 464-65 (Ind.1998). The Fourth Amendment generally prohibits warrantless searches. Id. at 465.
When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. "One such exception to the warrant requirement is: when a police officer makes a Terry stop, if he has reasonable fear of danger, he may conduct a carefully limited search of the outer clothing of the suspect in an attempt to discover weapons that might be used to harm him." The United States Supreme Court, in Terry v. Ohio, [] explained that police officers may employ investigative techniques short of arrest on less than probable cause without violating Fourth Amendment interests. The principal issue is whether the police action in question was reasonable under all the circumstances.
N.W. v. State, 834 N.E.2d 159, 162 (Ind.Ct. App.2005), trans. denied (internal citations omitted).
Terry permits a "reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing" with an armed person, and the officer "need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
In support of his argument, A.M. relies on L.A.F. v. State, 698 N.E.2d 355 (Ind.Ct. App.1998). In that case, two officers were patrolling a housing complex at 12:30 a.m. and observed an individual standing next to a car. The officers approached to investigate a possible curfew violation and noticed L.A.F. sleeping in the back seat of the car. L.A.F. was awakened and asked to identify himself. He was then subjected to a pat-down search, and the officer discovered a handgun in his pocket.
The handgun was admitted into evidence during the delinquency hearing and L.A.F. appealed claiming that the search was performed in violation of the Fourth Amendment. Our court agreed and concluded:
Although L.A.F.'s initial detention to check for a curfew violation may have been constitutionally appropriate, Officer Black failed to identify any specific and articulable facts which justified the additional frisk that resulted in the gun being discovered. Officer Black did testify that the pat down was conducted for "officer safety," but this general assertion does not articulate the specific facts which caused the officers to fear for their safety. The fact that the officers were investigating L.A.F. and another individual for curfew violations and that L.A.F. had been sleeping in the car at *150 the time the officers arrived is insufficient for a reasonably prudent man to be warranted in the belief that his safety or that of others was in danger.
Id. at 356.
In this case, there are additional circumstances that were not present in L.A.F. First, the officers had received reports of gunshots fired in the area they were patrolling. Officer Kinsey knew that A.M. was a juvenile, and he was several miles from home. A.M. was walking down the street after curfew at 1:00 a.m. Officer Kinsey knew A.M. had been shot in the leg and that he frequented the area with other individuals that the officer had arrested. Under these circumstances, Officer Kessie's decision to conduct a pat-down search was reasonable because the facts known to the officers justified their belief that their safety or that of others was in danger. Therefore, the juvenile court did not violate A.M.'s Fourth Amendment rights by admitting the handgun into evidence.

B. A.M.'s Article I, Section 11 Claim

Article I, Section 11 provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated." "Although Section 11 appears to have been derived from the Fourth Amendment and shares very similar language, we interpret and apply it independently from Fourth Amendment jurisprudence." Taylor v. State, 842 N.E.2d 327, 334 (Ind.2006). Section 11's purpose is to "protect from unreasonable police activity those areas of life that Hoosiers regard as private." Id.
In determining whether the police behavior was reasonable under Section 11, courts "must consider each case on its own facts and construe the constitutional provision liberally so as to guarantee the rights of people against unreasonable searches and seizures." Id. We evaluate the reasonableness of the police conduct under the totality of the circumstances. Masterson v. State, 843 N.E.2d 1001, 1006 (Ind.Ct.App.2006), trans. denied. The "burden is on the State to show that under the totality of the circumstances its intrusion was reasonable." State v. Bulington, 802 N.E.2d 435, 438 (Ind.2004). In determining reasonableness, we balance: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. Holder v. State, 847 N.E.2d 930, 940 (Ind.2006).
In this case, A.M. was walking down the street at 1:00 a.m. well after curfew. The officers were aware that gunshots had recently been fired in the area. A.M. was miles from home and known to frequent the area with other individuals that the officer had arrested on prior occasions. Consequently, the officers were justifiably concerned that a violation had occurred. The officers were also reasonably concerned that A.M. might be armed, and thus justifiably concerned for their safety. These considerations outweigh the intrusion to A.M. Accordingly, we conclude that under the totality of the circumstances, A.M.'s rights were not violated under Article I, Section 11 of the Indiana Constitution.

Conclusion
A.M.'s rights were not violated under the Fourth Amendment or Article I, Section 11 of the Indiana Constitution when the officers conducted a pat-down search of his person. Therefore, the juvenile *151 court did not abuse its discretion when it admitted the handgun into evidence.
Affirmed.
BAKER, C.J., and BROWN, J., concur.