**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 16 2014, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**RUTH JOHNSON**
**ELLEN F. HURLEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| M.G., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1311-JV-535 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Geoffrey Gaither, Magistrate
Cause No. 49D09-1307-JD-2162

**July 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

M.G. appeals his adjudication as a delinquent child for committing possession of marijuana,[1] which would be a Class A misdemeanor if committed by an adult. He raises the following restated issue for our review on appeal: whether the juvenile court abused its discretion when it admitted evidence that he contends was discovered after an illegal stop not based on reasonable suspicion.

We affirm.

## FACTS AND PROCEDURAL HISTORY

At approximately 8:12 p.m. on July 29, 2013, Indianapolis Metropolitan Police Department ("IMPD") Officers Jamie Thorn and Craig Solomon were working their regular patrol shifts when they were dispatched to 34th Street and Auburn Road in Marion County, Indiana. A caller had reported observing several juveniles on a playground behind a school "playing with what the caller assumed were toy guns." *Tr.* at 6. Officer Thorn testified that the police take these calls very seriously and handle them as though real guns are involved until the officers can determine otherwise because a toy gun and real guns can look extremely similar. *Id.* at 7. Officer Thorn arrived first at the scene in her fully marked patrol car and proceeded to look for the juveniles.

The area had two schools and two playgrounds, and Officer Thorn proceeded to the playground closest to an apartment complex where the police "have problems." *Id.* at 8. She saw several juveniles there, approached them, and was told that there were other juveniles that had run toward the apartment complex. Officer Thorn radioed this

---

[1] *See* Ind. Code § 35-48-4-11.

2

information to Officer Solomon and Officer Joel Keller, who had arrived for backup, and then proceeded to that area of the apartment complex herself. When she arrived on Auburn Road, she observed that there were between ten and twelve juveniles on the other playground across the street. Officer Thorn saw one "juvenile standing at the top of the playground with a gun" pointed in the air, but she could not tell if it was a real or toy gun. *Id*. at 9. Officer Thorn was approximately one hundred feet from the juveniles at that time.

After seeing this group of juveniles, Officer Thorn went to the parking lot of this second playground. As soon as she got out of her vehicle, a group of about four juveniles split off from the main group and headed away from Officer Thorn. The group that split off from the main group consisted of one juvenile with "dreads" on a bicycle and two or three others heading away on foot. *Id*. at 10-11. The juvenile that had been pointing the gun in the air was part of this group. Officer Thorn radioed to Officers Solomon and Keller that the group of juveniles was heading across the parking lot and that they were part of the group with the gun the officer had seen. She requested that the other officers investigate whether the juveniles were armed and continued to deal with the juveniles remaining on the playground. Officer Thorn could see the entirety of the playground and parking lot from her location and never lost sight of any of the juveniles.

After Officer Solomon received the radio call from Officer Thorn, he proceeded to make contact with the group of four juveniles, one of which was M.G. The juvenile on the bicycle attempted to ride away, so Officer Solomon requested that the other juveniles wait by the officers' vehicles while he and Officer Keller tried to catch up to the juvenile on the bicycle. Officer Keller was able to "get a hold of" of the juvenile on the bicycle, and

3

Officer Solomon turned his attention back to the group standing near the police cars. *Id.* at 23. At that time, the officer observed M.G. extend his right arm away from his body at full length and throw a large orange pill bottle, which he had in his hand, into the parking lot.

Due to his training and experience, Officer Solomon knew that marijuana is commonly stored in plastic baggies or prescription pill bottles. He believed that the orange pill bottle M.G. had thrown was likely used to store narcotics, so he placed M.G. in handcuffs to detain him. Officer Solomon proceeded to retrieve the pill bottle, which he kept in his view at all times, and discovered that it contained five individually wrapped baggies of a green, leafy substance that he knew to be marijuana based upon his training and experience. He seized the bottle, and the substance inside was later analyzed and found to be marijuana with a total weight of 3.90 grams.

The State filed a delinquency petition alleging that M.G. committed possession of marijuana, which would be a Class A misdemeanor if committed by an adult. A denial hearing was held on October 16, 2013, after which the juvenile court entered a true finding on the charge of Class A misdemeanor possession of marijuana. The juvenile court sentenced M.G. and placed him on probation until February 28, 2014. M.G. now appeals.

## DISCUSSION AND DECISION

M.G. contends that the juvenile court abused its discretion when it admitted the marijuana found in the pill bottle. M.G. initially challenged the admission of the marijuana through a motion to suppress. However, he is appealing from a completed delinquency hearing, and therefore, the issue is appropriately framed as whether the trial court abused

4

its discretion by admitting the evidence at trial. *A.M. v. State*, 891 N.E.2d 146, 148-49 (Ind. Ct. App. 2008) (citing *Collins v. State,* 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*), *trans. denied.* "Our standard of review on the admissibility of evidence 'is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection.'" *Id.* at 149 (quoting *Collins*, 822 N.E.2d at 218). A trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *S.G. v. State*, 956 N.E.2d 668, 674 (Ind. Ct. App. 2011), *trans. denied*. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In our review, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id*.

M.G. argues that the juvenile court abused its discretion in admitting evidence obtained after he was stopped by the police. He claims that the evidence was inadmissible because it was seized in violation of the Fourth Amendment to the United States Constitution. M.G. asserts that the police lacked reasonable suspicion to stop him and that any evidence discovered as a result of this illegal stop should not have been admitted at his delinquency hearing.

Evidence obtained in violation of a defendant's Fourth Amendment rights may not be introduced against him at trial. *W.H. v. State*, 928 N.E.2d 288, 294 (Ind. Ct. App. 2010), *trans. denied*. The Fourth Amendment prohibits "unreasonable searches and seizures" by the Government, and its safeguards extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Id*. (citing *United States v. Arvizu,* 534 U.S.

5

266, 273 (2002)).  However, a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity "may be afoot." *Terry v. Ohio,* 392 U.S. 1, 21-22 (1968).

Reasonable suspicion exists where the facts known to the detaining officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur.  *Campos v. State,* 885 N.E.2d 590, 597 (Ind. 2008).  When determining whether reasonable suspicion existed, reviewing courts examine the "totality of the circumstances" of the case to see whether the officer had a "particularized and objective basis" for suspecting legal wrongdoing.  *Id.* (citing *Arvizu,* 534 U.S. at 273).  Officers are not required to rule out all possibility of innocent behavior before initiating a stop, and the possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct.  *Id.* at 294-95.  Additionally, "courts do take into account the nature of the suspected offense when assessing reasonable suspicion, and they have 'required less evidence when the stop is to intercept [someone] suspected of being armed with a gun.'" *Id.* at 295.

The evidence presented showed that Officers Thorn and Solomon had been dispatched to the area of 34th Street and Auburn Road due to a call notifying the police that a group of juveniles were on a playground behind a school in the area armed with what the caller believed were toy guns.  There were two schools with playgrounds located in that

6

area. On one of the playgrounds, Officer Thorn observed a juvenile standing at the top of the playground with a gun pointed in the air. From her vantage point of one hundred feet away, she could not tell if it was a real firearm or a toy gun. When Officer Thorn exited her patrol car to approach the juveniles, the juvenile with the gun and several others split off from the larger group and started to head away from her. One juvenile with "dreads" was on a bicycle, and two or three others were on foot. *Tr*. at 11. Officer Thorn radioed this information to Officers Solomon and Keller and asked them to investigate whether the juveniles that split from the group were armed while she dealt with the group remaining on the playground. Officer Thorn kept the juveniles in her view at all times. When Officers Solomon and Keller reached the group that had split off, they requested that M.G. and his friends wait by the officers' patrol cars after he had obtained knowledge that one of them or another juvenile who rode away on a bicycle had possession of some kind of gun. Based on the totality of the circumstances, the officers briefly detained this group of juveniles, which included M.G., because they had a reasonable suspicion that criminal activity may be afoot as juveniles are not permitted to possess guns. Therefore, the officers' stop of M.G. and his friends did not violate M.G.'s Fourth Amendment rights.

M.G.'s argument that Officer Solomon did not have reasonable suspicion because he did not know if the gun observed was a real or toy gun is a request to reweigh the evidence, which we cannot do. *S.G.*, 956 N.E.2d at 674. Officer Solomon was not required to rule out all innocent explanations before initiating a stop. *W.H.*, 928 N.E.2d at 294. Based on the information given to him by Officer Thorn, Officer Solomon reasonably believed that at least one of the juveniles the officer had requested to wait by the patrol cars

had some kind of gun in the juvenile's possession that had previously been pointed in the air by the juvenile. Officer Solomon knew that these juveniles had been a part of the group on the playground and had walked away as soon as Officer Thorn started to approach. He also knew that a caller had notified the police that the group of juveniles were armed with what may or may not have been toy guns, that the police had experienced problems in the area, and that the police take calls regarding possible guns very seriously and handle them as though real guns are involved. Officer Solomon, therefore, had a reasonable concern for the safety of the public and the other juveniles present due to the danger posed by a gun.

M.G. relies on *Dowdell v. State*, 747 N.E.2d 564 (Ind. Ct. App. 2001), *trans. denied*, for his argument that Officer Solomon did not have reasonable suspicion that M.G. was committing or was about to commit a crime. However, that case is distinguishable from the present case. There, a police officer drove by the defendant, and from a distance of about fifteen feet, observed the defendant smoking what appeared to be a "blunt." *Id.* at 565. The defendant was not acting suspiciously, and the officer admitted that he could not tell whether the defendant was smoking a blunt or a legal cigar. *Id.* A panel of this court found that the officer did not have reasonable suspicion that the defendant was committing or was about to commit a crime because of the officer's admission that he was not certain if the defendant was smoking a blunt or a cigar. *Id.* at 566. Here, however, the case involves a juvenile brandishing a gun and then walking away when an officer approached. The individual observed pointing the gun in the air was a juvenile, and the gun appeared real enough to Officer Thorn that she was not satisfied that it was a toy. The juvenile then

8

walked away from the playground as the officer approached in an attempt to avoid contact with the officer. Further, the possible gun in the present case that Officer Thorn saw the juvenile point in the air was different from the possible blunt in the *Dowdell* case because of the potential and immediate danger that a real gun poses to the safety of the community. The nature of the suspected offense is taken into account by courts when assessing reasonable suspicion, and less evidence is required when the stop is to intercept someone suspected of being armed with a gun. *W.H.* 928 N.E.2d at 295.

We conclude that, based on the totality of the circumstances, Officer Solomon had reasonable suspicion that a crime was being committed or was about to be committed, which justified a brief detention of M.G. and the other juveniles he was with. Therefore, the marijuana that M.G. threw away from his person after he was detained was properly admissible. The juvenile court did not abuse its discretion when it allowed the evidence to be admitted at M.G.'s denial hearing.

Affirmed.

BAILEY, J., and MAY, J., concur.