## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 28 2017, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer L. Koethe
La Porte, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David J. Morris,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 28, 2017

Court of Appeals Case No.
46A04-1701-CR-167

Appeal from the La Porte Superior Court

The Honorable Michael S. Bergerson, Judge

Trial Court Cause No.
46D01-1604-MR-2

**Bailey, Judge.**

# Case Summary

David Morris ("Morris") appeals his convictions, following a jury trial, for count I, murder, a felony;[1] count II, felony murder, a felony;[2] count III, burglary, as a Level 4 felony;[3] count IV, burglary, as Level 4 felony;[4] count V, auto theft, as a Level 6 felony;[5] count VI, auto theft, a Level 6 felony;[6] and count VII, fraud, a Level 6 felony.[7] We affirm.

# Issues

Morris raises two issues on appeal:

I. Whether the trial court abused its discretion when it admitted into evidence Morris' statements to police following his arrest.

II. Whether the trial court abused its discretion when it denied his motion for a mistrial.

---

[1] Ind. Code § 35-42-1-1(1) (2016).

[2] I.C. § 35-42-1-1(2).

[3] I.C. § 35-43-2-1(1).

[4] *Id.*

[5] I.C. § 35-43-4-2.5.

[6] *Id.*

[7] I.C. § 35-43-5-4.

# Facts and Procedural History

[3] Hufracio Arteaga ("Arteaga") lived and worked on West 11th Street in Michigan City. Arteaga co-owned the Easy Drive Auto Sales car lot, which included the adjacent office building where Arteaga also lived. However, in late March of 2016, Arteaga and his business partner, Sergio Serrano ("Serrano"), had their license to sell cars revoked.

[4] On April 23, 2016, Serrano discovered Arteaga's body in the office of the dealership. Arteaga had been stabbed to death. Serrano called the Michigan City Police Department ("MCPD"), who responded to the scene. Serrano told the police that some tires were missing from the business, and a green Subaru was missing from the car lot. As the dealership was not authorized to sell any vehicles, the MCPD officers entered the missing Subaru as a stolen vehicle. Additionally, Arteaga's wallet, credit card, and keys to the dealership office were missing.

[5] On Saturday, April 23, an eye witness contacted police and informed them that she had seen someone climbing out of the dealership through a broken window on April 19, 2016. As part of the investigation, on April 23, MCPD officers discovered a video from a nearby business that showed parts of the car lot from April 19 to April 23. On April 23 and 24, MCPD officers viewed the video which showed a man dressed in a dark gray hat, dark jacket, gray pants, and dark shoes walking from the dealership office on Thursday, April 21. The video showed the man walk to the green Subaru in the car lot and drive away.

After "several detectives" and two other "person[s] of interest" identified Morris as the man in the video, the officers discovered Morris was on probation and attempted to locate him at his last known address. Tr. Vol. II at 17. The officers were unable to locate Morris but decided to surveil him when he reported to the probation department on Monday, April 25.

[6] On April 25, Morris arrived at the Michigan City courthouse and reported for probation. The MCPD officers surveilling the courthouse observed Morris was wearing substantially the same clothing that he had been wearing in the surveillance video of the car dealership. Morris loitered outside the courthouse, talking to someone in a van. When the van drove away, Morris began walking south through alleyways. The officers observed Morris as he walked, crossing streets and ducking down several alleys.

[7] MCPD Detective Willie Henderson ("Det. Henderson") was one of the officers assigned to the surveillance team, and at one point he thought that Morris made eye contact with him in one of the alleys. Worried that Morris might flee, Det. Henderson consulted with lead Detective Francisco Rodriguez ("Det. Rodriguez") and then decided to arrest Morris for the auto theft. In the meantime, Morris had walked to a house on Spring Street. Det. Henderson observed that Morris looked nervous as he stood at the back porch talking to other individuals. Morris then walked to the front of the house and back again, looking around all the while. The officers then approached Morris, handcuffed him, and placed him under arrest.

[8]     At the police station, Morris, who was still handcuffed, spoke with MCPD Detective Al Bush ("Det. Bush") and Det. Rodriquez in a video-recorded interview. Det. Bush asked Morris some preliminary questions about where Morris lived, what his telephone number was, whether he could read and write, and where he worked.[8] Det. Bush then read Morris his *Miranda* rights, and Morris signed a waiver of those rights. Det. Rodriguez told Morris that Morris was at the police station because the Subaru had been reported stolen. During the course of a lengthy interrogation, Morris admitted to breaking into the car dealership and stealing the green Subaru on Thursday, April 21. He also admitted to bringing the Subaru back to the dealership on Saturday, April 23, because it had run out of gas. He admitted that he then stole a white car and some tires from the dealership on April 23. Although Morris contended that Arteaga had given Morris Arteaga's credit card to buy some items, he admitted to using Arteaga's credit card to buy liquor without Arteaga's authorization.

[9]     Following Morris' confession, police found in Morris' coat the keys to the white Hyundai Tiburon that was missing from the car lot, a receipt to a pawn shop, and a note with Arteaga's cell phone number on it. The police also found that Morris and an accomplice had used Arteaga's credit cards to make several purchases at liquor stores, gas stations, and a Meijer. Morris and the

---

[8] We note that routine, preliminary questions, such as those "regarding name, address, height, weight, eye color, date of birth, and current age are outside the scope of *Miranda*'s coverage," and may, therefore, be asked prior to reading the *Miranda* warnings. *Matheny v. State*, 983 N.E.2d 672, 677 (Ind. Ct. App. 2013) (quotations omitted) (citing *Loving v. State*, 647 N.E.2d 1123, 1126 (Ind. 1995)), *trans. denied*.

accomplice used Arteaga's credit cards to purchase a Roomba vacuum at Meijer, which matched an item found on Morris' pawn shop receipt. Morris was also captured on Meijer surveillance video driving away in the stolen white Hyundai Tiburon. When police tested Morris' coat, pants, and shoes, they found Arteaga's blood and DNA on them. A crime scene analysis also concluded that the patterns of blood on Morris' shoes and clothing were consistent with someone who was present when the murder occurred.

[10] On April 29, 2016, the State charged Morris with murder, felony murder, two counts of Level 4 felony burglary, two counts of Level 6 felony auto theft, and Level 6 felony fraud. While Morris was incarcerated and awaiting trial, he admitted to two different inmates that he had killed Arteaga. Morris told Corey Wahl ("Wahl") that he had stabbed Arteaga, and that he was concerned that he had left sweat and his own DNA on Arteaga's body. Later, Morris told Sherman Arnett ("Arnett"), another fellow inmate, that while police said Morris had stabbed Arteaga in the head, Morris had actually stabbed him in the neck—which was consistent with the placement of Arteaga's fatal injuries.

[11] Prior to his trial, Morris sought to exclude evidence of his admissions and evidence procured while executing the subsequent search warrant on the basis that they were obtained after an unlawful arrest. On June 6, 2016, the trial court held a hearing on Morris' motion to exclude. At the hearing, Detectives Rodriguez and Henderson testified that MCPD arrested Morris after they had viewed the surveillance video of the car lot and identified Morris as the man in that video stealing the green Subaru. The trial court denied Morris' motion,

finding "that probable cause existed for Defendant's arrest on April 25, 2016 on the charge of Auto Theft based upon video surveillance and positive identification of the Defendant after multiple other leads were cleared by investigation." Appellant's App. Vol. II at 57.

[12] Morris' jury trial commenced on September 12, 2016. At trial, Det. Henderson testified that he had obtained a warrant to search Morris' residence and to seize Morris' clothing. Det. Henderson stated, "On Tuesday, April 26, 2016, after Mr. Morris returned from Mindsight Consultants ["Mindsight"], I collected the remaining…" Tr. Vol. VI at 6-7. Morris' counsel objected and requested a sidebar. Outside the presence of the jury, Morris claimed that Mindsight was a company that specialized in polygraph examinations and that Det. Henderson's reference to Mindsight was therefore an impermissible reference to polygraphs. On voir dire, Det. Henderson stated that he knew that Mindsight provided consultations for polygraphs, but was uncertain of any other area of business in which they participated.

[13] The trial court overruled Morris' objection and motion to strike Det. Henderson's testimony about Mindsight, and it denied Morris' request for a mistrial. The trial court noted that there had been no mention of a polygraph in the testimony that had been given, and Morris stipulated to that. The trial court also noted that Mindsight provides other services, such as hypnotic therapy, and the company was not widely known outside of the law enforcement and legal communities, and it was not equated generally with polygraphs. The trial

court stated that to poll the jury or to give an admonishment would only "shine a spotlight" on the matter and raise more questions with the jury. *Id*. at 34.

[14] The jury found Morris guilty as charged. The trial court sentenced him to sixty years in the Department of Correction ("DOC") on count I, murder, and count II—felony murder—was merged with count I. The court sentenced him to ten years on each burglary count, to run consecutively with each other and count I. The court sentenced him to two years on each auto theft count, each to run concurrently to each other and the prior counts. The court sentenced him to two years on the fraud count, to run consecutively to counts I, III, and IV. Morris' total sentence is eighty-two years in the DOC. This appeal ensued.

# Discussion and Decision

## Admission of Morris' Statement to Police

[15] Morris contends that the trial court erred in admitting into evidence his statement to police, which included his confession to auto theft. He originally challenged the admission of the statement in a motion to suppress. However, rather than taking an interlocutory appeal on the denial of his motion, he proceeded to a complete jury trial.

> "Thus, the issue is ... appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003). Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Ackerman v. State*,

774 N.E.2d 970, 974-75 (Ind. Ct. App. 2002), *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. However, we must also consider the uncontested evidence favorable to the defendant. *Id*. In this sense, the standard of review differs from the typical sufficiency of the evidence case where only evidence favorable to the verdict is considered. *Fair v. State*, 627 N.E.2d 427, 434 (Ind. 1993).

*Widduck v. State*, 861 N.E.2d 1267, 1269 (Ind. Ct. App. 2007).

[16]  Morris asserts that his statement following his arrest was improperly admitted under the Fourth Amendment to the United States Constitution[9] because the police lacked probable cause for the arrest. Under the Fourth Amendment, it is well-settled that an officer may arrest a suspect without a warrant if he has probable cause to believe that the suspect has committed a criminal act. *Ortiz v. State*, 716 N.E.2d 345, 348 (Ind. 1999) (citing *Sears v. State*, 668 N.E.2d 662, 666-67 (Ind. 1996)).

Probable cause exists when, at the time of the arrest, the arresting officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that the suspect had committed a criminal act. [*Sears*, 668 N.E.2d] at 667. The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis, *see Peterson* [*v. State*], 674 N.E.2d [528,] 536 [(Ind. 1996)], and the facts and

---

[9] Morris does not raise a claim under Article 1, Section 11 of the Indiana Constitution.

circumstances need not relate to the same crime with which the suspect is ultimately charged. *Sears*, 668 N.E.2d at 667 n. 10.

*Id*.

[17] Here, the evidence established that, at the time the police arrested[10] Morris, they had probable cause to believe that he had committed the crime of auto theft. In the course of investigating Arteaga's death, on April 23 the police obtained a video from a nearby business that showed parts of the car lot from April 19 to April 23. On April 23 and 24, the police viewed the video which showed Morris at the dealership lot on April 21, dressed in a dark gray hat, dark jacket, gray pants, and dark shoes. The video showed Morris walk from the dealership office to the green Subaru in the car lot and drive away. Serrano had informed the police on April 23 that the green Subaru was missing from the car lot. On Monday, April 25, the police observed Morris wearing the same clothes he had worn in the video of the car lot. Thus, when the police arrested Morris on April 25, they had knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that Morris had stolen the green Subaru.[11] That

---

[10] In the interview, prior to reading Morris his *Miranda* rights and questioning him, the police initially stated to Morris that he was not yet under arrest. However, regardless of those initial statements, Morris clearly was under arrest from the time he was apprehended and handcuffed at the house on Spring Street. *E.g., Kelly v. State*, 997 N.E.2d 1045, 1051 (Ind. 2013) (quotation and citation omitted) ("[A]n arrest occurs when a police officer interrupts the freedom of the accused and restricts his liberty of movement."). And neither party disputes that Morris was, in fact, under arrest at the time he was interviewed by the police.

[11] Because the police had probable cause for Morris' arrest independent of the eye witness' statements identifying him as the person climbing out of the window of the dealership, it is irrelevant whether the eye witness was unreliable, as Morris contends.

is, the police had probable cause to arrest Morris for auto theft. Therefore, the trial court did not abuse its discretion in holding that Morris' statements to police following his lawful arrest were admissible.

## Denial of Motion for Mistrial

[18] Morris also asserts that the trial court erred when it denied his motion for a mistrial. We review a trial court's decision to grant or deny a mistrial for an abuse of discretion, *Isom v. State*, 41 N.E.3d 469, 480 (Ind. 2015), keeping in mind that a mistrial "is an extreme sanction that is warranted only when no other cure can be expected to rectify the situation." *Adams v. State*, 890 N.E.2d 770, 775 (Ind. Ct. App. 2008), *trans. denied*.

> To prevail on appeal from the denial of a motion for mistrial, the appellant must demonstrate that the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on the jury's decision rather than upon the degree of impropriety of the conduct.

*Id.* (internal citation omitted).

[19] Here, Morris contends that he was placed in a position of grave peril by Det. Hendricks' testimony that "[o]n Tuesday, April 26, 2016, after Mr. Morris returned from Mindsight Consultants ["Mindsight"], I collected the remaining…" Tr. Vol. VI at 6-7. He contends that the words "Mindsight Consultants" are "synonymous with polygraphs" in his community and,

therefore, Det. Hendricks' testimony violated an order in limine that had prohibited the parties from mentioning polygraph examinations.[12] Appellant's Br. at 18. He points out that, in Indiana, "[i]n general, a reference to a polygraph examination without an agreement by both parties is inadmissible and grounds for error." *Glenn v. State*, 796 N.E.2d 322, 325 (Ind. Ct. App. 2003), *trans. denied*.

[20] However, as the trial court noted, Morris provided no evidence to support his claim that "Mindsight Consultants" is synonymous with polygraphs, and there was never any use of the word "polygraph" itself. Thus, Morris failed to show that the reference to Mindsight was prejudicial to him. Moreover, Det. Hendricks' passing reference to Mindsight likely had little persuasive effect on the jury, even if they understood that Mindsight conducted polygraph examinations, because there was substantial evidence other than Det. Hendricks' brief remark to support the verdict. Video evidence showed Morris stealing the green Subaru from the car lot on April 21, and Morris admitted to that. Morris also admitted to being at the car dealership to steal the white car on April 23, the day Serrano found Arteaga's body. Following his arrest, Morris admitted to two of his cell mates that he murdered Arteaga. And Arteaga's blood was found on Morris' clothing and shoes. Thus, the probable impact on the jury of the brief reference to Mindsight was low in light of all the other evidence supporting the verdict, and Morris was not placed in grave peril.

---

[12] The motion in limine and the court's order on that motion are not contained in the appendix.

The trial court did not abuse its discretion when it denied Morris' motion for a mistrial.

# Conclusion

[21] The evidence established that the police had probable cause to arrest Morris for auto theft; therefore, the trial court did not abuse its discretion in holding that Morris' statements to police following his lawful arrest were admissible. And, the trial court did not abuse its discretion in denying Morris' motion for a mistrial, as the passing reference to "Mindsight Consultants" was not prejudicial and, in any case, had little, if any, persuasive effect on the jury.

[22] Affirmed.

Baker, J., and Altice, J., concur.